**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------x
                                                                            :

NICOLE COSTIN, individually and on behalf of   :
her minor son, BABY A,
                                                                            :

                   Plaintiff,                      :

                                                     :

                   -against-                     :    Case No. 1:22-cv-00296 (MAD/CFH)

                                                     :

GLENS FALLS HOSPITAL, KEVIN M.         :
GRASSI, M.D., STACY L. RALPH, KAREN
RANTTILA, LYNETTE M. BISS, NICOLE       :
BENNETT, JENNIFER NIX, AMY HOOPER,
JODIE SMITH, STEPHANIE DECHENE, and   :
ALYCIA N. GREGORY,
                                                     :

                   Defendants.                :
------------------------------------------------------------x

**MEMORANDUM OF LAW IN OPPOSITION TO THE UNITED STATES' RENEWED MOTION TO SUBSTITUTE ITSELF AS THE PARTY DEFENDANT AND DISMISS THE COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(1)**

                                                                SCHULTE ROTH & ZABEL LLP

                                                                Taleah E. Jennings
                                                                Shannon Wolf
                                                                Hamdi Soysal
                                                                Skylar Klein

                                                                919 Third Avenue
                                                                New York, New York 10022
                                                                Telephone (212) 756-2000
                                                                Facsimile (212) 593-5955

                                                                *Attorneys for Plaintiff Nicole Costin,*
                                                                *individually and on behalf of her minor son,*
                                                                *Baby A*

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ...................................................................................................1

RELEVANT ALLEGATIONS AND PROCEDURAL HISTORY ...............................................2

STANDARD....................................................................................................................................4

    ARGUMENT ......................................................................................................................5

    I. THE COURT SHOULD NOT SUBSTITUTE THE GOVERNMENT FOR DEFENDANT BISS. ........................................................................................................5

        A.    The Court, Not the USAO, Must Determine Whether Defendant Biss Was Acting Within the Scope of Her Employment When She Committed Assault and Battery. ..................................................................5

        B.    Under New York Law, Defendant Biss Was Not Acting Within The Scope of Her Employment When She Committed Assault and Battery. ............................................................................................................7

        C.    Ms. Costin Has Sufficiently Alleged That Defendant Biss Committed Assault and Battery — Not Simple Negligence. .......................................11

    II. THE COURT SHOULD RENDER AS MOOT THE GOVERNMENT'S MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION. ...............................................................................................................13

CONCLUSION................................................................................................................................14

## **TABLE OF AUTHORITIES**

**Cases**                                                         **Page(s)**

*Adams v. N.Y.C. Transit Authority*,
   211 A.D.2d 285, 626 N.Y.S.2d 455 (1st Dep't 1995),
   *aff'd* 88 N.Y.2d 116, 666 N.E.2d 216 (1996) ................................................................8

*Baggio v. Lombardi*,
   726 F. Supp. 922 (E.D.N.Y. 1989) .................................................................... 4, 6, 7

*Burlarley v. Wal-Mart Stores, Inc.*,
   75 A.D.3d 955, 904 N.Y.S.2d 826 (3d Dep't 2010) ......................................................7, 8

*Cuoco v. Moritsugu*,
   222 F.3d 99 (2d Cir. 2000)..............................................................................12

*Costin v. Glens Falls Hospital*,
   103 F.4th 946 (2d. Cir. 2024) .........................................................................4

*Doe v. Guthrie Clinic, Ltd.*,
   710 F.3d 492 (2d Cir. 2013)............................................................................8

*Gibilaro v. Lomax Trading Corp.*,
   22 A.D.2d 703, 253 N.Y.S.2d 888 (2d Dep't 1964),
   *aff'd* 16 N.Y.2d 898, 212 N.E.2d 61 (1965) ........................................................8

*Kelley v. Richford Health Center, Inc.*,
   115 F.4th 132 (2d Cir. 2024) ..........................................................................6

*Levesque v. CVPH Medical Center*,
   No. 9:12–CV–960 (DNH/CFH), 2014 WL 1269383 (N.D.N.Y. Mar. 26, 2014)....................13

*Lojuk v. Quandt*,
   706 F.2d 1456 (7th Cir. 1983) .......................................................................12

*McHugh v. University of Vermont*,
   966 F.2d 67 (2d Cir. 1992),
   *abrogated on other grounds* by *Osborn v. Haley*, 549 U.S. 225 (2007) ............ 4, 5, 7, 11

*Messina v. Matarasso, M.D. F.A.C.S. P.C.*,
   284 A.D.2d 32, 729 N.Y.S.2d 4 (1st Dep't 2001) ..................................................13

*Meyers v. Epstein*,
   232 F. Supp. 2d 192 (S.D.N.Y. 2002)...............................................................10

*Oates v. New York Hospital*,
   131 A.D.2d 368, 517 N.Y.S.2d 6 (1st Dep't 1987) ...............................................12

*Oneta v. Paul Tocci Co., Inc.*,
   271 A.D. 681, 67 N.Y.S.2d 795 (1st Dep't 1947),
   *aff'd* 297 N.Y. 629, 75 N.E.2d 743 (1947) ............................................................................8, 10

*Petrousky v. United States*,
   728 F. Supp. 890 (N.D.N.Y. 1990) ..........................................................................................5, 9

*Riviello v. Waldron*,
   47 N.Y.2d 297, 391 N.E.2d 1278 (1979)..................................................................................8, 9

*Schloendorff v. Society of the New York Hospital*,
   211 N.Y. 125, 105 N.E. 92 (1914),
   *abrogated on other grounds* by *Bing v. Thunig*, 2 N.Y.2d 656, 143 N.E.2d 3
   (1957) ..........................................................................................................................................10

*Spitz v. Coughlin*,
   161 A.D.2d 1088, 557 N.Y.S.2d 647 (3d Dep't 1990) .................................................................8

*Suarez v. Bakalchuk,*
   66 A.D.3d 419, 887 N.Y.S.2d 6 (1st Dep't 2009) .........................................................................8

*Tangorre v. Victim*,
   No. 1:24-CV-388 (MAD/CFH), 2024 WL 4979169 (N.D.N.Y. Dec. 4, 2024).........................6

*Totten v. Scaife*,
   No. 3:21-0306, 2022 WL 211592 (S.D.W. Va. Jan. 24, 2022) ...............................................11

*VanBrocklen v. Erie County Medical Center*,
   96 A.D.3d 1394, 949 N.Y.S.2d 300 (4th Dep't 2012).............................................................13

*Vega v. Northland Marketing Corp.*,
   289 A.D.2d 565, 735 N.Y.S.2d 213 (2d Dep't 2001) ..................................................................8

*Young v. Sethi*,
   188 A.D.3d 1339, 134 N.Y.S.3d 571 (3d Dep't 2020) ............................................................13

**Statutes**

42 U.S.C. § 233(e) ........................................................................................................................11, 13

Fed. Tort Claims Act ("FTCA") ............................................................................................... *passim*

   28 U.S.C. § 2671 .............................................................................................................................7

   28 U.S.C. § 2680(h) ......................................................................................................................11

**Other Authorities**

American Medical Association, *Informed Consent*, Code of Medical Ethics
Opinion 2.1.1 (2017)................................................................................................................10

Paul Michael Brown, *Personal Liability Tort Litigation Against Federal
Employees*, 58 U.S. Att'ys' Bull. 6 (2010) .....................................................................................6

Plaintiff Nicole Costin, individually and on behalf of her minor son, Baby A, by and through her attorneys, Schulte Roth & Zabel, LLP, submits this Memorandum of Law in opposition to the United States' (the "Government") Renewed Motion to (1) Substitute Itself as the Party Defendant and (2) Dismiss the Complaint Pursuant to Fed. R. Civ. P. 12(b)(1) (the "Motion").

## PRELIMINARY STATEMENT

The Federal Tort Claims Act (the "FTCA") does not immunize from common-law tort claims medical providers who unlawfully override a patient's express medical decisions by sticking needles in and out of her vagina ***over her express objections and pleas to stop*** simply because the provider is a federal employee and performed the unlawful acts during her work shift. Yet, that is what the Government seeks by seeking to substitute in for Defendant Biss (based solely on a certification issued by the Government stating in conclusory fashion that Defendant Biss was acting within the scope of her employment at "all times relevant") and dismiss this action. The Court should deny the Government's Motion as a matter of constitutional, statutory, and common law.

*First*, the Court has an independent duty to determine whether an individual was acting within the scope of her employment for purposes of the FTCA. Such inquiry is a matter of constitutional due process and often requires an evidentiary hearing, particularly if a finding that an employee was acting within the scope of her employment would, like here, result in the dismissal of a plaintiff's claims.

*Second*, in determining an individual's scope of employment, the Court cannot rely solely on a certification submitted by a government representative if the plaintiff challenges that certification. The Court must make its own determination pursuant to the multi-factor test required

by New York law. As set forth below, those factors weigh heavily in favor of finding that Defendant Biss was ***not*** acting within the scope of her employment when she assaulted and battered Ms. Costin.

*Third*, the Government's attempt to exempt Defendant Biss from liability by characterizing Defendant Biss' conduct as mere "negligence" during a medical procedure fails. At this stage of proceedings, the Court must take Ms. Costin's allegations, which do not allege "negligence" and do not allege that Defendant Biss was performing a medical procedure, as true. Ms. Costin has alleged an intentional act of assault and battery under New York law.

For these reasons, the Court should deny the Government's Motion to Substitute, with prejudice, and dismiss its Motion to Dismiss as moot. In the alternative, Plaintiff respectfully requests that the Court deny the Motion to Substitute without prejudice, subject to renewal following an evidentiary hearing on the scope of employment issue.

## **RELEVANT ALLEGATIONS AND PROCEDURAL HISTORY**

On March 29, 2021, Ms. Costin gave birth to her second son at Glens Falls Hospital ("GFH"). *See* First Amended Complaint ("FAC") ¶ 24 (June 23, 2022), Dkt. No. 14. During her time at GFH, hospital staff harassed Ms. Costin, performed tests and procedures on her, and later, her newborn, without her consent and would not allow her to go home, even though she expressed feeling scared, unsafe, and a desire to leave. *See id*. ¶¶ 26, 32, 34–36, 40–41, 46–50, 52, 59–60. Hospital staff also denied Ms. Costin the epidural she requested and was entitled to receive. Instead, GFH staff forcefully induced her son's birth by injecting her with a labor-accelerating drug—without her informed consent—pursuant to the hospital's discriminatory policies and practices as well as the results of a non-consensual, unreliable and, ultimately, false urine test. *Id*.

¶¶ 36–37. As a result, Ms. Costin's body pushed Baby A out with such force that several inches of her body were ripped open. *Id.* ¶ 38.

GFH denied Ms. Costin—despite her pleas, predetermined birthing plan, and obvious physical pain—pain management medication. *Id*. ¶¶ 27, 35, 38, 40. Then, immediately after suffering through that nightmarish labor, and over her express and immediate objections, Defendant Biss assisted Defendant Nicole Bennett ("Nurse Midwife Bennett") in penetrating Ms. Costin's torn vaginal area with a needle or other sharp object. *Id.* ¶ 40. In so doing, Defendant Biss, with Nurse Midwife Bennett (who was then a student), held Ms. Costin's legs wide open, withholding pain management medication, and disregarding Ms. Costin's excruciating pain. *Id.* Although Ms. Costin was weak, exhausted, and shaking from pain, she used all of her strength to relentlessly protest and yell across her body for Defendant Biss (and Nurse Midwife Bennett) to stop. *Id.* Defendant Biss ignored Ms. Costin's protests and continued to forcefully hold her legs open so that Nurse Midwife Bennett could continue forcing a sharp object (presumably a needle) in and out of Ms. Costin's vaginal area. *Id*.

Ms. Costin commenced this action on March 28, 2022. Dkt. No. 1. She filed the FAC on June 23, 2022, asserting a claim against Defendant Biss for assault and battery. *See* FAC ¶¶ 121–24. On January 19, 2023, the United States Attorney for the Northern District of New York filed a motion for substitution and accompanying certification. *See* Dkt. Nos. 61-1, 61-4. Ms. Costin opposed the Government's motion on February 9, 2023. *See* Dkt. No. 62. On February 15, 2023, the Court denied the Government's motion as moot because it granted motions to dismiss filed by defendants other than Defendant Biss. *See* Dkt. No. 64. Ms. Costin appealed the Court's Order to the Second Circuit on March 17, 2023. *See* Dkt. No. 65. On appeal, the Second Circuit affirmed in part and reversed in part the Court's Order and remanded for further proceedings. *See*

3

*Costin v. Glens Falls Hosp.*, 103 F.4th 946 (2d. Cir. 2024). The Second Circuit vacated the Court's dismissal of Ms. Costin's federal discrimination claims as to GFH's blanket policies of drug testing patients on medication for substance use disorder (*i.e.*, Subutex or Suboxone) and reporting pregnant patients on such medications to child protective services agencies. *Id.* at 954–56.[1] ***Critically***, as to the state law claims, including those alleged against Defendant Biss, the Second Circuit stated, "[b]ecause we vacate in part the dismissal of Costin's federal claims, we vacate that much of the judgment declining to exercise supplemental jurisdiction." *Id.* at 956.

The Government filed the instant Renewed Motion to Substitute Itself As The Party Defendant And Dismiss The Complaint on January 8, 2025. *See* Gov. Br.[2] None of the submissions made by the Government in connection with the Motion disclose or describe what information was "available" to U.S. Attorney Freedman, what information formed the basis of her determination, or what she considered to be "all times relevant to the [FAC]." Gov. Br., Ex. A (the "Certification"), Dkt. No. 93-3.

## STANDARD

Government certifications concerning whether an individual was acting within the scope of his or her employment, if disputed, are subject to review. *See, e.g.*, *Baggio v. Lombardi*, 726 F. Supp. 922, 926 (E.D.N.Y. 1989) (ordering evidentiary hearing on issue relating to scope of employment notwithstanding Attorney General's certification); *see also McHugh v. Univ. of Vermont*, 966 F.2d 67, 74 (2d Cir. 1992) ("We believe that a scope-of-employment certification

---

[1] The Second Circuit affirmed the Court's ruling that GFH denying Ms. Costin an epidural, accelerating her labor, failing to discharge her son, preventing skin-to-skin contact between Ms. Costin and her son, and failing to explain treatment alternatives did not constitute actionable discrimination under the Americans with Disabilities ("ADA") or Rehabilitation Act ("RA"). *Id.* at 954.

[2] Citations to Gov. Br. refer to the U.S. Attorney's Office's ("USAO") Memorandum Of Law In Support Of The United States' Renewed Motion To Substitute Itself As The Party Defendant And Dismiss The Complaint Pursuant To Fed. R. Civ. P. 12(b)(1) (Jan 8, 2025), Dkt. No. 93-1.

4

should be reviewed *de novo* for purposes of substituting the United States as a defendant and precluding an action against the federal employee."), *abrogated on other grounds* by *Osborn v. Haley*, 549 U.S. 225, 247 (2007).

## ARGUMENT

I.  **THE COURT SHOULD NOT SUBSTITUTE THE GOVERNMENT FOR DEFENDANT BISS.**

The Government argues that it should be substituted in the place of Defendant Biss pursuant to the FTCA because the U.S. Attorney's Office ("the USAO") submitted a certification that, based on the knowledge available to it, Defendant Biss was acting within the scope of her employment "at all times relevant to the [FAC]." Gov. Br. at 1. For the reasons set forth below, the Government is wrong as a matter of law and fact. Its Motion should be denied.

> A.  The Court, Not the USAO, Must Determine Whether Defendant Biss Was Acting Within the Scope of Her Employment When She Committed Assault and Battery.

As Ms. Costin has alleged, Defendant Biss assaulted and battered Ms. Costin when she forcefully held Ms. Costin's legs open so that Nurse Midwife Bennett could continue inserting a needle or other sharp object in and out of Ms. Costin's vaginal area despite Ms. Costin's pleas and explicit directives to Defendant Biss and Nurse Midwife Bennett to ***stop***. FAC ¶ 40. When viewed in the light most favorable to Ms. Costin (as the Court must do on a motion to dismiss), Ms. Costin's allegations demonstrate that Defendant Biss was not acting in her capacity as a nurse midwife when she engaged in that conduct, as such intrusive, violent, and unauthorized procedures are not, upon Ms. Costin's information and belief, within the scope of a nurse midwife's role. *Id*. Accordingly, the Certification holds no evidentiary weight, and the Court must determine the scope of employment issue on its own. *See McHugh*, 966 F.2d at 74 ("judicial review of a certification of scope of employment must be inferred to avoid serious constitutional protection"); *Petrousky v. United States*, 728 F. Supp. 890, 895 (N.D.N.Y. 1990) ("To avoid constitutional deficiencies, the

5

court determined that the [Government's] scope of employment certification is not entitled to deference. Accordingly, the court considers the issue *de novo*."); *see also Kelley v. Richford Health Ctr., Inc.*, 115 F.4th 132, 136, 140–41 (2d Cir. 2024) (affirming order granting remand to state court after lower court held evidentiary hearing partly on scope of employment of physician seeking government's substitution and government withdrew motion to substitute); *Baggio*, 726 F. Supp. at 925 (the Court has "a duty to determine the issue of scope of employment"); Paul Michael Brown, *Personal Liability Tort Litigation Against Federal Employees*, 58 U.S. Att'ys' Bull. 6, 13 (2010) ("Unless challenged, a certification is conclusive evidence that the employee was acting in the scope of employment . . . Once the plaintiff asserts a challenge, however, the certification has no evidentiary weight.").

In cases where, like here, "plaintiffs will lose their cause of action completely should the complaint be dismissed at this stage, it would be unwise for the Court to bar any recovery by a ruling based only on the papers before it." *Baggio*, 726 F. Supp. at 925 (denying the government's motion to dismiss on the basis that an evidentiary hearing was required to conduct scope-of-employment analysis); *see also Tangorre v. Victim*, No. 1:24-CV-388 (MAD/CFH), 2024 WL 4979169, at *7–9 (N.D.N.Y. Dec. 4, 2024) (D'Agostino, J.) (requiring an evidentiary hearing to determine disputed material facts regarding scope of employment and denying United States' motion for substitution pending evidentiary hearing in military officer's defamation action). In the event the Court does not deny the Government's Motion, with prejudice, it should hold an evidentiary hearing on this issue, particularly given that the USAO has not disclosed the "basis of the information" she relied on in making the Government's determination or what she means by stating that Defendant Biss was acting within the scope of her employment "at all times relevant." *See* Certification, Dkt. No. 93-3. If the Court accepts the conclusory

6

assertions set forth in the Certification, the Court would lose subject matter jurisdiction to resolve Ms. Costin's claim—Ms. Costin would be stripped of her due process right to a judicial determination on the scope of employment issue and would have no path to recovery for the egregious acts committed by Defendant Biss. As the Second Circuit explained, "[s]tate tort claims are property subject to constitutional protection." *McHugh*, 966 F.2d at 74. Thus, "[b]efore such property rights can be eliminated . . . a plaintiff is entitled to a due process hearing on whether [a] federal employee was acting within the scope of employment." *Id*.

> B. Under New York Law, Defendant Biss Was Not Acting Within The Scope of Her Employment When She Committed Assault and Battery.

As an employee of Hudson Headwaters Health Network ("HHHN"), Defendant Biss was, at the relevant time, an "employee of the government" for purposes of the FTCA. 28 U.S.C. § 2671. If a federal employee is deemed to be acting outside the scope of his or her employment under the appropriate state law (here, New York law), the FTCA does not apply and the Government is not the appropriate defendant in the action. *See, e.g.*, *Baggio*, 726 F. Supp. at 925 (denying the government's motion to dismiss where there were issues of fact as to whether the federal employees were acting within the scope of their employment).

New York law requires courts to apply a five-factor analysis to determine whether an individual was acting within the scope of her employment when engaging in the alleged conduct. *See Burlarley v. Wal-Mart Stores, Inc.*, 75 A.D.3d 955, 956, 904 N.Y.S.2d 826, 827 (3d Dep't 2010). The inquiry "generally presents questions of fact." *Id*. at 827. The factors are: (1) the connection between the time, place and occasion for the act; (2) the history of the relationship between the employer and employee as spelled out in actual practice; (3) whether the act is one commonly done by such an employee; (4) the extent to which the act departs from normal methods of performance; and (5) whether the specific act was one that the employer could

7

reasonably have anticipated. *Riviello v. Waldron*, 47 N.Y.2d 297, 303, 391 N.E.2d 1278, 1281 (1979).

In applying the *Riviello* factors, New York courts have repeatedly held that employees both in the medical and non-medical context who commit acts of assault—even during work hours (like Defendant Biss)—are not acting within the scope of their employment. In *Suarez v. Bakalchuk*, the First Department of New York's Appellate Division found that a doctor acted outside the scope of his employment when he used "vulgar language" on a discharge form. 66 A.D.3d 419, 419, 887 N.Y.S.2d 6, 6 (1st Dep't 2009). Specifically, the court found that, "[b]y including vulgar language on the discharge form, the doctor plainly was acting outside the scope of his employment" given that the discharge form was intended only to state "the treatment prescribed." *Id.* Likewise, in *Spitz v. Coughlin*, the Third Department of the Appellate Division found that a corrections officer was acting outside the scope of employment when he opened a jail cell during his work hours, allowing other corrections officers to physically assault an inmate. 161 A.D.2d 1088, 1089, 557 N.Y.S.2d 647, 647–48 (3d Dep't 1990). The court noted that the corrections officer "undertook acts contrary to known operating procedures and the essential correctional facility goal." *Id.* at 648. It added that his participation in the matter "reveals acts undertaken knowingly which indicate an intentional course of conduct contrary to institutional rules, training and common sense." *Id.*[3]

---

[3] *See also Doe v. Guthrie Clinic, Ltd.*, 710 F.3d 492, 495 (2d Cir. 2013) (on-duty nurse acted outside the scope of her employment when she accessed a patient's confidential medical information and revealed the information to a third party); *Burlarley v. Wal-Mart Stores, Inc.*, 75 A.D.3d at 956, 904 N.Y.S.2d at 827 (3d Dep't 2010) (cashier was acting outside of the scope of employment after throwing a full bag of heavy items at an unsuspecting customer's face as a "joke" while working a register); *Vega v. Northland Mktg. Corp.*, 289 A.D.2d 565, 566, 735 N.Y.S.2d 213, 214 (2d Dep't 2001) (gasoline attendant who struck and pushed plaintiff when plaintiff asked about the pump's meter during a gas purchase was acting outside the scope of employment); *Adams v. N.Y.C. Transit Auth.*, 211 A.D.2d 285, 295, 626 N.Y.S.2d 455, 461 (1st Dep't 1995) (token booth clerk's assault on a passenger as passenger deposited her token fell outside the scope of employment); *Gibilaro v. Lomax Trading Corp.*, 22 A.D.2d 703, 703, 253 N.Y.S.2d 888, 889 (2d Dep't 1964) (corporate employee was acting outside the scope of his employment when he assaulted a person delivering a package to the corporation's office); *Oneta v. Paul Tocci Co., Inc.*, 271 A.D. 681, 683, 67 N.Y.S.2d 795,

These cases demonstrate that where the only factor favoring a finding that the employee acted within the scope of their employment is the time and location of their misconduct, they are found to have acted *outside* the scope of their employment. That is precisely the situation here. The *only Riviello* factor that weighs in favor of finding that Defendant Biss was acting within the scope of her employment is the first factor, *i.e.*, that she assaulted and battered Ms. Costin during her work hours and at the place of her employment. All other factors that can be gleaned from the Court submissions demonstrate that Defendant Biss was not, in fact, acting within the scope of her employment: patients who have all mental capacities are *not* commonly held down by their legs and subject to sharp objects inserted into their bodies *against their will* by medical providers at a hospital (third factor); such forceful, violent, and unauthorized procedures, against a patient's will, certainly depart from normal methods of performance by nurse midwives (fourth factor); and those acts would not (or should not) have been reasonably anticipated by any medical provider's employer (fifth factor).[4] As this Court has previously recognized, "New York courts place greater emphasis on the fifth factor of foreseeability," than that placed on the first factor. *Petrousky*, 728 F. Supp. at 895. Here, not only does the fifth factor weigh in favor of finding that Defendant Biss was acting outside the scope of her employment when she engaged in the conduct at issue in this case, but facts and allegations pertaining to other factors (third and fourth) do as well.

Thus, even though Defendant Biss was authorized to be in Ms. Costin's hospital room during her working hours, she was not performing an authorized medical procedure within

---

798 (1st Dep't 1947) (employee was acting outside the scope of employment when he used force against plaintiff after a discussion about the location of a hand truck the employee routinely used while engaging in the collection of waste paper).

[4] Discovery is required to determine whether there are facts relevant to the second factor.

9

the scope of her employment; rather, she attacked Ms. Costin in a manner that was "entirely foreign to the service in which [Defendant Biss] was engaged." *Oneta*, 271 A.D. at 683, 67 N.Y.S.2d at 798. As Ms. Costin alleged, Defendant Biss held Ms. Costin's legs wide open (over Ms. Costin's objections, cries, and unequivocal pleas to stop) to assist Nurse Midwife Bennett's continued insertion of "a needle through her perineal area without her consent and . . . over her express objection." FAC ¶ 122. It is not common practice to overrule a patient's express objections to medical procedures; in fact, healthcare workers are specifically trained to obtain their patient's informed consent prior to conducting medical procedures—particularly those that are invasive. *See* Am. Med. Assoc., *Informed Consent*, Code of Med. Ethics Op. 2.1.1 (2017) ("Informed consent to medical treatment is fundamental in both ethics and law. Patients have the right to receive information and ask questions about recommended treatments so that they can make well-considered decisions about care."). There is no legitimate business or medical motivation to ignore a patient who is yelling for their healthcare provider to stop a procedure as it is occurring. FAC ¶ 40. Forcing patients to undergo medical procedures without their consent is a complete departure from normal medical training and performance, and Defendant Biss could not, under the circumstances, have been acting within the scope of her employment at or after the moment Ms. Costin told her to **stop**. *See Meyers v. Epstein*, 232 F. Supp. 2d 192, 196 (S.D.N.Y. 2002) (citing *Schloendorff v. Soc'y of N.Y. Hosp.*, 211 N.Y. 125, 129-30, 105 N.E. 92, 93 (1914) (Cardozo, J.) ("[E]very human being of adult years and sound mind has a right to determine what shall be done with his own body; and a surgeon who performs an operation without his patient's consent commits an assault, for which he is liable in damages."), *abrogated on other grounds* by *Bing v. Thunig*, 2 N.Y.2d 656, 143 N.E.2d 3 (1957)).

10

Accordingly, the Court should not substitute the United States as the defendant in place of Defendant Biss. It would not only immunize Defendant Biss from the consequences of her egregious departure from her duties as a medical professional but also would deprive Ms. Costin of due process. *See McHugh*, 966 F.2d at 71.

    C.    Ms. Costin Has Sufficiently Alleged That Defendant Biss Committed Assault and Battery — Not Simple Negligence.

The FTCA's immunity for federal employees does *not* extend to claims of assault and battery. 28 U.S.C. § 2680(h). The Government argues, however, that pursuant to 42 U.S.C. § 233(e), that exception does not apply here because Ms. Costin's claim of assault and battery purportedly "aris[es] out of negligence in the performance of medical, surgical, dental, or related functions." Gov. Br. at 5. Not so. Ms. Costin's claim against Defendant Biss for assault and battery arises out of Defendant Biss' intentional, forceful, and unauthorized touching—all done with disregard to Ms. Costin's pleas to stop. *See* FAC ¶¶ 121–23. **The acts do not arise out of negligence.** Once Ms. Costin voiced her lack of consent, Defendant Biss was no longer performing *any* medical function.

In support of its claim, the Government cites three cases, two of which are out of circuit. Gov. Br. at 5–6. In *Totten v. Scaife*, a completely inapposite case that analyzed West Virginia law, the plaintiff did not allege—as Ms. Costin has alleged here—that she directed her defendant doctor to stop performing a medical procedure; nor did she allege—as Ms. Costin has alleged here—that the procedure was unauthorized, forceful, or the result of expressed unwanted bodily touching. No. 3:21-0306, 2022 WL 211592, at *5 (S.D.W. Va. Jan. 24, 2022). To the contrary, the plaintiff in *Totten* filed an initial complaint against the doctor alleging negligence and other torts that are not listed in the statute as exempted from coverage under the FTCA. *Id*. And, even upon the plaintiff's attempt to amend her pleading to assert a claim of assault and battery, the

11

factual allegations underlying the proposed new claim were identical to those alleged to support her claim of negligence and other torts arising out of the provision of medical services. *Id.* As such, the Court found that the plaintiff simply relabeled her cause of action, which did not change the actual claim from one arising out of negligence to an intentional tort covered by the statute.

The Government also cites *Cuoco v. Moritsugu*, 222 F.3d 99, 108 (2d Cir. 2000), which involved a *pro se* transgender inmate's suit against Federal Bureau of Prisons ("BOP") officials and prison medical staff due to their alleged denial of estrogen tablets. The defendant BOP Director and Medical Director, as well as the defendant prison medical director appealed the lower court's denial of their motion to dismiss or for summary judgment. *Id.* at 103. The Second Circuit held in part that the BOP's and the prison's respective medical directors were absolutely immune as they performed medical or related functions. *Id.* at 108. That is not the case here. Defendant Biss and Nurse Midwife Bennett's continued forceful insertion of a sharp object into and out of Ms. Costin's perineal area over Ms. Costin's repeated objections did not happen in the course of medical or related duties. It constituted assault and battery committed outside the parameters of proper medical treatment. *See Oates v. N.Y. Hosp.*, 131 A.D.2d 368, 369, 517 N.Y.S.2d 6, 7 (1st Dep't 1987) (affirming denial of summary judgment where plaintiff patient who had initially requested treatment thereafter refused to consent to surgical procedure).

The Government's citation to *Lojuk v. Quandt*, 706 F.2d 1456 (7th Cir. 1983) fares no better. Gov. Br. at 6. There, the Seventh Circuit court reversed the district court's dismissal, pursuant to the FTCA, of the plaintiff patient's battery claim against a Veterans Administration psychiatrist who the patient alleged had subjected him to electroconvulsive therapy without the patient's consent. *Id.* at 1464. Thus, the *Lojuk* decision does not support the Government's position in this case—it goes directly against it. Like the plaintiff in *Lojuk*, Ms. Costin has alleged

12

that Defendant Biss acted without her consent or authorization, and over her express objection, when she forcefully held open Ms. Costin's legs so that Nurse Midwife Bennet could repeatedly stick her with a needle. FAC ¶ 40. Ms. Costin was weak, exhausted, and shaking from pain; she suffered harm from Defendant Biss' actions. *Id*. ¶ 123. For purposes of this motion, the Court must accept Ms. Costin's allegations as true. *See Levesque v. CVPH Med. Ctr.*, No. 9:12–CV–960 (DNH/CFH), 2014 WL 1269383, at *2 (N.D.N.Y. Mar. 26, 2014) (at the pleadings stage, the Court must construe all factual allegations in a light most favorable to the non-moving party).

Ms. Costin has pled a claim under New York law for assault and battery against Defendant Biss, based on intentional, unauthorized touching—not negligence. *See Messina v. Matarasso*, *M.D. F.A.C.S. P.C.*, 284 A.D.2d 32, 34–35, 729 N.Y.S.2d 4, 7 (1st Dep't 2001) (finding that plaintiff's allegation that defendant performed a procedure on her "with no consent at all" was "clearly an allegation of intentional conduct"); *VanBrocklen v. Erie Cnty. Med. Ctr.*, 96 A.D.3d 1394, 1394, 949 N.Y.S.2d 300, 300 (4th Dep't 2012) ("It is well settled that a medical professional may be deemed to have committed battery, rather than malpractice, if he or she carries out a procedure or treatment to which the patient has provided 'no consent at all.'"); *see, e.g.*, *Young v. Sethi*, 188 A.D.3d 1339, 1342, 134 N.Y.S.3d 571, 574 (3d Dep't 2020) (finding that patient's claim that surgeons de-rotated her pelvis as a separate procedure from an interbody fusion surgery to which she consented was based on allegations that the patient's surgeons acted intentionally, and was therefore subject to the statute of limitations for battery, not medical malpractice). Immunity for federal employees, under 42 U.S.C. § 233(e), does not apply here.

## II. THE COURT SHOULD RENDER AS MOOT THE GOVERNMENT'S MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION.

The Government is not a proper defendant in this action and should not be substituted in for Defendant Biss. *See supra* Section I. Accordingly, the Government's motion to

13

dismiss for lack of subject matter jurisdiction—based on its argument that Ms. Costin failed to exhaust administrative remedies in connection with an action against the Government—should be denied as moot. Gov. Br. at 7–9. In the alternative, Plaintiff respectfully requests that the Court hold an evidentiary hearing on the scope of employment issue.

## CONCLUSION

For the reasons set forth herein, Ms. Costin respectfully requests that the Court deny the Government's Motion in its entirety.

DATED:   New York, New York
         February 5, 2025

SCHULTE ROTH & ZABEL LLP

By:  */s/ Taleah E. Jennings*
     Taleah E. Jennings
     Shannon Wolf
     Hamdi Soysal
     Skylar Klein

     919 Third Avenue
     New York, New York  10022
     (212) 849-7000
     (212) 849-7100

     *Attorneys for Plaintiff Nicole Costin,
     individually and on behalf of her minor son,
     Baby A*