UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

NICOLE COSTIN, *individually and on behalf of her minor son,* BABY A,

                       **Plaintiff,**

    vs.                                  1:22-CV-296
                                                (MAD/CFH)

GLENS FALLS HOSPITAL, KEVIN M. GRASSI, M.D.,
STACY L. RALPH, KAREN RANTILLA,
LYNETTE M. BISS, NICOLE BENNETT,
JENNIFER NIX, AMY HOOPER, JODIE SMITH,
STEPHANIE DECHIENE, and ALYCIA N. GREGORY,

                       **Defendants.**

---

| APPEARANCES: | OF COUNSEL: |
|---|---|
| **SCHULTE ROTH & ZABEL LLP**<br>919 Third Avenue<br>New York, New York 10022<br>Attorneys for Plaintiff | TALEAH E. JENNINGS, ESQ.<br>WILLIAM H. GUSSMAN, ESQ.<br>JULIA BESKIN, ESQ.<br>SHANNON B. WOLF, ESQ.<br>SKYLAR KLEIN, ESQ.<br>YANA HOLDEN, ESQ. |
| **WHITEMAN OSTERMAN & HANNA LLP**<br>One Commerce Plaza<br>Suite 1900<br>Albany, New York 12260<br>Attorneys for Defendants Glens Falls<br>Hospital, Kevin M. Grassi M.D., Stacey<br>L. Ralph, Jennifer Nix, Amy Hooper,<br>Jodie Smith, Stephanie Dechene, and<br>Alycia N. Gregory | ROBERT S. ROSBOROUGH, IV ESQ.<br>JENNIFER MARIE YETTO, ESQ.<br>JUSTINE M. CASE-FITZGERALD<br>ESQ. |
| **REBAR KELLY**<br>470 Norristown Road, Suite 201<br>Blue Bell, Pennsylvania 19422<br>Attorneys for Defendant Karen Ranttila | CATHLEEN KELLY REBAR, ESQ<br>PATRICK J. HEALEY, ESQ. |
| **OFFICE OF THE UNITED<br>STATES ATTORNEY** | JOHN D. HOGGAN, JR., AUSA |

1

| | |
|---|---|
| James T. Foley U.S. Courthouse<br>445 Broadway, Room 218<br>Albany, New York 12207<br>Attorneys for Defendant Lynette M. Biss | **KAREN FOLSTER LESPERANCE,**<br>**AUSA** |
| **MARTIN CLEARWATER & BELL LLP**<br>245 Main Street, Suite 501<br>White Plains, New York 10601<br>Attorney for Defendant Nicole Bennett | **CHRISTOPHER JOSEPH DANIEL,**<br>**ESQ.** |

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

On March 28, 2022, Plaintiff Nicole Costin, individually and on behalf of her minor son, Baby A, commenced this action against Defendants Glens Falls Hospital ("GFH"); Dr. Kevin M. Grassi, M.D.; Nurse Stacey L. Ralph; Nurse Karen Rantila; Midwife Lynette M. Biss; Midwife Nicole Bennett; Nurse Jennifer Nix; Nurse Amy Hooper; Nurse Jodie Smith; Social Worker Stephanie Dechene; and Social Worker Alycia N. Gregory. *See* Dkt. No. 1. Plaintiff filed an Amended Complaint on June 23, 2022. *See* Dkt. No. 14. Plaintiff's Amended Complaint raises eleven causes of action including violations of the Americans with Disabilities Act ("ADA") and Rehabilitation Act ("RA") against GFH and various New York state law claims. *See id.* at ¶¶ 76-142. As relevant to this motion, Plaintiff raises claims of assault and battery against Defendant Biss. *See id.* at ¶ 122.

Currently before the Court is the Government's renewed motion to substitute itself as a defendant in place of Defendant Biss and to dismiss Plaintiff's claims against it for lack of subject matter jurisdiction. *See* Dkt. No. 93-1 at 3. The Government filed its initial motion to substitute on January 19, 2023, *see* Dkt. No. 61, which Plaintiff opposed on February 9, 2023. *See* Dkt. No. 62. On February 15, 2023, the Court denied the Government's motion as moot because it

2

dismissed Plaintiff's Amended Complaint.  *See* Dkt. No. 63.  Plaintiff appealed this Court's judgment to the Second Circuit.  *See* Dkt. No. 65.  The Second Circuit affirmed in part, reversed in part, and vacated in part the Court's judgment, and reinstated Plaintiff's ADA and RA claims. *See Costin v. Glens Falls Hosp.*, 103 F.4th 946, 956 (2d Cir. 2024).  As a result, the dismissal of the state law claims against Defendant Biss was vacated by the Second Circuit.  *See id.*

In its motion to substitute, the Government argues that, pursuant to the Federal Tort Claims Act ("FTCA") and the provisions of 42 U.S.C. § 233(a), the United States is the proper defendant and the FTCA is the exclusive remedy for Plaintiff's claims against Defendant Biss. *See* Dkt. No. 93-1 at 5-7.  Plaintiff disagrees, arguing that Defendant Biss was not acting within the scope of her employment and, therefore, the Government should not be substituted as a defendant.  *See* Dkt. No. 107 at 12-16.[1]

For the following reasons, the Government's motion to substitute and dismiss Plaintiff's Amended Complaint as against Defendant Biss is granted.

## II. BACKGROUND

The Court will briefly summarize the allegations relevant to the pending motion but otherwise assumes the parties' familiarity with the facts and procedural history set forth in its February 15, 2023, Memorandum-Decision and Order.  *See* Dkt. No. 63 at 3-8.

---

[1] Defendants GFH, Dr. Grassi, Nurse Ralph, Nurse Nix, Nurse Hooper, Nurse Smith, Social Worker Dechene, and Social Worker Gregory (collectively, where appropriate, the "GFH Defendants") submitted a memorandum expressing no opposition to the Government's motion to substitute.  *See* Dkt. No. 117.  The GFH Defendants oppose the Government's motion only to the extent that Plaintiff's claims ADA and RA claims "may be broadly construed to allege involvement of Defendant Biss in the implementation of the allegedly discriminatory GFH policies, and to ensure the continued viability of the GFH Defendants' cross claims against Defendant Biss, [HHHN], or the United States for indemnification and/or contribution."  *Id.* at 6. The Court notes, however, that the ADA and RA claims asserted in the Amended Complaint are brought solely against Defendant GFH.  *See* Dkt. No. 14 at ¶¶ 76-86.

This case arises from the events and procedures surrounding Plaintiff's childbirth experience at GFH on March 29, 2021. *See* Dkt. No. 14 at ¶ 24. When Plaintiff's water broke, "she immediately reached out to Hudson Headwaters Health Network Women's Health ["HHHN"], (an entity that works with GFH to provide midwives during delivery at GFH)." *Id.* at ¶ 24. Plaintiff alleges that Defendant Biss was a Certified Nurse Midwife employed by HHHN who, along with other individual Defendants, entered Plaintiff's hospital room at GFH during her labor to check Plaintiff's dilation. *See id.* at ¶¶ 13, 33. At the time, Plaintiff was taking Subutex, a medication prescribed by her primary care physician, for her substance abuse disorder. *See id.* at ¶ 28. After experiencing several hours of contractions at GFH, Defendant Biss entered Plaintiff's room, allegedly stating that GFH would be withholding an epidural, despite Plaintiff's repeated requests for the epidural. *See id.* at ¶ 37.

After eight hours of labor without an epidural, Baby A was born on March 29, 2021, at 10:14 p.m., and "exited the birth canal with a completely bruised face, and the blood vessels in both of his eyes were burst." *Id.* at ¶ 38. Additionally, "several inches of [Plaintiff's] body were ripped open during delivery." *Id.* Plaintiff alleges that after Baby A was born, Defendant Biss and student midwife Defendant Bennett, "were actively looking between her legs" and began to "repair her torn vaginal area." *Id.* at ¶ 40. Plaintiff contends she was "weak, exhausted and shaking from pain" and told Defendant Biss "to stop." *Id.* Nonetheless, they "continued the procedure through completion" without "numb[ing] the area[.]" *Id.* Plaintiff "could feel the needle entering and exiting her body." *Id.* Plaintiff alleges that Defendant Biss committed assault and battery when she and Defendant Bennett "inserted a needle through her perineal area without her consent, and continued to do so over her express objection." *Id.* at ¶ 123. Plaintiff seeks "damages in an amount to be determined at trial[]" from Defendant Biss. *Id.* at ¶ 124.

4

On December 16, 2022, the United States Attorney for the Northern District of New York, pursuant to 42 U.S.C. § 233(c) and 28 C.F.R. § 15.3, certified that Defendant Biss was, at all relevant times to the case, a Certified Nurse Midwife employed by HHHN acting within the scope of her employment. *See* Dkt. No. 93-3 at 2. Additionally, the United States Attorney certified that HHHN is a "federally deemed health center[.]" *Id.* As of January 1, 2020, HHHN was certified by the Department of Health and Human Services ("HHS") to have qualified as a Public Health Service employee under 42 U.S.C. § 233(g) and, therefore, eligible for FTCA coverage during all times relevant to this case. *See* Dkt. No. 93-4 at ¶ 5.

### III. DISCUSSION

**A.     Standard of Review**

The Government moves to dismiss Plaintiff's Amended Complaint for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1), arguing that once it is substituted as a defendant, Plaintiff's claims must be dismissed because she failed to exhaust her administrative remedies. *See* Dkt. No. 93-1 at 9. "It is a fundamental precept that federal courts are courts of limited jurisdiction." *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 374 (1978). Under Rule 12(b)(1) of the Federal Rules of Civil Procedure, "[a] case is properly dismissed for lack of subject matter jurisdiction . . . when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). Further, "[t]he party asserting subject matter jurisdiction carries the burden of establishing, by a preponderance of the evidence, that jurisdiction exists." *Landau v. Eisenberg*, 922 F.3d 495, 497 (2d Cir. 2019) (citation omitted). In ruling on a motion to dismiss for lack of subject matter jurisdiction, a district court "may refer to evidence outside the pleadings." *Makarova*, 201 F.3d at 113. "When evaluating a motion to dismiss pursuant to Rule 12(b)(1), the

district court must resolve all ambiguities and draw all inferences in favor of the plaintiff." *Stegemann v. United States*, No. 9:21-CV-00949, 2024 WL 5182184, *2 (N.D.N.Y. Dec. 20, 2024) (citing *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005)).

**B.     Statutory Framework**

Generally, "'[t]he United States, as sovereign, is immune from suit [unless] it consents to be sued,' and hence may be sued only to the extent that it has waived sovereign immunity by enacting a statute consenting to suit." *Millares Guiraldes de Tineo v. U.S.*, 137 F.3d 715, 719 (2d Cir. 1998) (quoting *United States v. Sherwood*, 312 U.S. 584, 586 (1941)).  The FTCA allows a limited waiver of the United States' sovereign immunity

> for certain classes of torts claims and provides that the federal district courts shall have exclusive jurisdiction over damages claims against the United States for injury or loss of property, or for personal injury or death "caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment. "

*Celestine v. Mount Vernon Neighborhood Health Ctr.*, 403 F.3d 76, 80 (2d Cir. 2005) (quoting 28 U.S.C. § 1346(b)(1)).  If a tort claim is brought against an employee of the Government,

> [u]pon certification by the Attorney General that the defendant employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose, any civil action or proceeding commenced upon such claim in a United States district court shall be deemed an action against the United States under the provisions of this title and all references thereto, and the United States shall be substituted as the party defendant.

28 U.S.C. § 2679(d)(1).

The Federally Supported Health Centers Assistance Act ("FSHCAA") "authorizes the Secretary of the Department of Health and Human Services to deem certain health centers that receive federal funds, and their employees, to be employees of the Public Health Service ("PHS")

6

for the purposes of 42 U.S.C. § 233." *Agyin v. Razmzan*, 986 F.3d 168, 172 (2d Cir. 2021). "Under § 233(a), PHS employees are entitled to the protections of the . . . FTCA . . . including 'absolute immunity . . . for actions arising out of the performance of medical or related functions within the scope of their employment.'" *Id.* (quoting *Hui v. Castaneda*, 559 U.S. 799, 806 (2010)). "[O]nce the Secretary makes a determination that an entity [or an . . . employee . . . of an entity] is deemed to be an employee of the Public Health Service for purposes of [§ 233], the determination [is] . . . final and binding . . . ." *Id.* (quoting 42 U.S.C. § 233(g)(1)(F)).

The FSHCAA "protects 'employees of the Public Health Service from being subject to suit while performing medical and similar functions by requiring that such lawsuits be brought against the United States instead.'" *Kelley v. Richford Health Ctr., Inc.*, 115 F.4th 132, 136 (2d Cir. 2024) (quoting *Cuoco v. Mortisugu*, 222 F.3d 99, 107-08 (2d Cir. 2000)). Under the FSHCAA, when a tort action is brought against a federal employee working for the PHS, the employee is substituted by the United States and the FTCA becomes the exclusive remedy "for damage for personal injury, including death, resulting from the performance of medical, surgical, dental, or related functions . . . , by any commissioned officer or employee of the Public Health Service while acting within the scope of his office or employment . . . ." *Cuoco*, 222 F.3d at 107 (quoting 42 U.S.C. § 233(a)). The Second Circuit has interpreted the FTCA's purpose to "both to allow recovery by people injured by federal employees or by agents of the Federal Government, and, at the same time, to immunize such employees and agents from liability for negligent or wrongful acts done in the scope of their employment." *Celestine*, 403 F.3d at 80 (citing 28 U.S.C. § 2679(b)(1); 42 U.S.C. § 233(a)); *see also Cuoco*, 222 F.3d at 107.

This statutory framework renders the question of substitution twofold: (1) whether the defendant was acting within the scope of her employment; and (2), whether the injury the plaintiff

7

seeks compensation for was one "'resulting from the performance of medical . . . or related functions[.]'" *Cuoco*, 222 F.3d at 107 (quoting 42 U.S.C. § 233(a)).  Here, Plaintiff does not dispute Defendant Biss' status as an HHHN employee.  *See* Dkt. No. 61-2 at ¶ 6.[2]  Rather, Plaintiff challenges the Government's scope of employment certification and determination that Defendant Biss' conduct constituted a medical function.  *See* Dkt. No. 107 at 12, 16.

C.     **Scope of Employment**

For purposes of substitution, the FTCA provides that the Attorney General may certify that a defendant was acting within the scope of their employment at the time the claim arose and,

> [u]pon certification . . . any civil action or proceeding commenced upon such claim in a United States district court shall be deemed an action against the United States under the provisions of this title and all references thereto, and the United States shall be substituted as the party defendant.

28 U.S.C. § 2679(d)(1).  The certification may also be provided by the United States Attorney's Office by virtue of the authority vested in it pursuant to 28 C.F.R. §§ 15.3-15.4.  *See* Dkt. No. 93-3 at 2.  Here, as explained, the United States Attorney for the Northern District of New York certified that Defendant Biss, during all times relevant to this case, was acting within the scope of her employment as a Certified Nurse Midwife for HHHN.  *See id*.

The Supreme Court has held that a plaintiff may challenge a scope of employment certification because the certification is "'the first, but not the final word'" on the scope of employment inquiry for substitution.  *Osborn v. Haley*, 549 U.S. 225, 246 (2007) (quoting *De Martinez v. Lamagno*, 515 U.S. 417, 432 (1995)).  The certification "does not conclusively

---

[2] HHHN is a grantee of the U.S. Department of Health and Human Services ("HHS") and a designated Federally Qualified Health Center ("FQHC") and eligible for FTCA coverage effective as of January 1, 2020, and throughout all times relevant to the Amended Complaint.  *See* Dkt. No. 93-4 at ¶ 5; *see also* Dkt. No. 61-2 at ¶ 6 (citing About Us, Hudson Headwater Health Network, https://www.hhhn.org/about/ (last visited July 31, 2025)).

8

establish as correct the substitution of the United States as defendant in place of the employee." *Lamagno*, 515 U.S. at 434. If disputed, the scope of employment certification is reviewed by the district court "*de novo* for purposes of substituting the United States as a defendant and precluding an action against the federal employee." *McHugh v. Univ. of Vermont*, 966 F.2d 67, 72 (2d Cir. 1992), *abrogated on other grounds by Osborn*, 548 U.S. at 247. "Such review is triggered by the government's motion for substitution and opposition papers from the plaintiff that allege with particularity facts relevant to the scope-of-employment issue." *Id.* at 74. On review, the burden shifts "to the plaintiff to prove, by a preponderance of the evidence, that defendants were acting outside the scope of their employment." *Corley v. United States Dep't of Justice*, No. 14-CV-925, 2016 WL 11395009, *5 (E.D.N.Y. Sept. 6, 2016) (citing *Griebsch v. Weaver*, No. 7:05-CV-0958, 2005 WL 2260374, *2 (N.D.N.Y. Sept. 16, 2005)); *see also Scott v. United States*, No. 24-CV-01506, 2025 WL 836557, *5 (E.D.N.Y. Mar. 17, 2025). "[I]f 'the District Court determines that the employee in fact, and not simply as alleged by the plaintiff, engaged in conduct beyond the scope of his employment,' . . . the substitution motion must be denied, and the suit will proceed against the government employee in a personal capacity." *Carroll v. Trump*, 49 F.4th 759, 766 (2d Cir. 2022) (quoting *Osborn*, 549 U.S. at 231) (internal citation and alteration omitted).

"[T]he district court applies state law principles pertaining to when intentional torts conduct falls within the scope of a party's employment." *Bello v. United States*, 93 Fed. Appx. 288, 289 (2d Cir. 2004) (citing *McHugh*, 966 F.2d at 75). "The court must view the tortious conduct in the light most favorable to plaintiff, but makes its own findings of fact with respect to the scope of the tortfeasor's employment[.]" *Id.* at 288-89 (citing *McHugh*, 966 F.2d at 74-75). In New York, "'[t]here is no single mechanical test to determine whether at a particular moment an employee is engaged in the employer's business . . . .'" *Aryai v. Forfeiture Support Assocs.*, 25 F.

9

Supp. 3d 376, 389 (S.D.N.Y. 2012) (quoting *Rausman v. Baugh*, 248 A.D.2d 8, 10 (2d Dep't 1998)). The New York Court of Appeals has provided the following factors for a court to consider in making this determination:

> [1] the time, place and occasion for the act; [2] the history of the relationship between employer and employee as spelled out in actual practice; [3] whether the act is one commonly done by such an employee; [4] the extent of departure from normal methods of performance; and [5] whether the specific act was one that the employer could reasonably have anticipated.

*Fountain v. Karim*, 838 F.3d 129, 138 (2d Cir. 2016) (quoting *Riviello v. Waldron*, 47 N.Y.2d 297, 303 (1979)). "'With respect to [the] foreseeability requirement, New York courts require foreseeability of general, rather than specific, acts.'" *Roseblatt v. St. John's Episcopal Hosp.*, No. 11-CV-1106, 2012 WL 294518, *6 (E.D.N.Y. Jan. 31, 2012) (quoting *Griebsch*, 2005 WL 2260374, at *3). "[W]here the element of general foreseeability exists, even intentional tort situations have been found to fall within the scope of employment." *Riviello*, 47 N.Y.2d at 304. Courts assess "'whether the act was done while the servant was doing his master's work, no matter how irregularly, or with what disregard of instructions.'" *Rosse v. United States*, 110 F. Supp. 3d 415, 423 (N.D.N.Y. 2015) (quoting *Riviello*, 47 N.Y.2d at 299).

Plaintiff argues that Defendant Biss was not acting within the scope of her employment as her alleged actions constitute assault and battery. *See* Dkt. No. 107 at 15. The FTCA provides an intentional tort exception for federal employees' immunity for, *inter alia*, "[a]ny claim arising out of assault [or] battery . . . ." 28 U.S.C. § 2680(h). However, § 233(e) eliminates the FTCA's intentional tort exception in cases of "assault or battery arising out of negligence in the performance of medical, surgical, dental, or related functions, including the conduct of clinical studies or investigations." 42 U.S.C. § 233(e); *see also Levin v. U.S.*, 568 U.S. 503, 508-09

10

(2013) (explaining how 42 U.S.C. § 233(e) abrogates the intentional tort exception of the FTCA under 28 U.S.C. § 2680(h)).

Plaintiff argues that Defendant Biss' actions were intentional torts of assault and battery that "do not arise out of negligence[]" and, therefore, do not fall under § 233(e). Dkt. No. 107 at 16. The Government argues that "Plaintiff's focus upon the nature of the cause of action she alleged is misplaced" and that once the Government established Plaintiff's claims arose out of "'the performance of medical, surgical, dental, or related functions'" the FTCA became the exclusive remedy regardless of "whether or not the cause of action alleged sounds in negligence." Dkt. No. 109 at 5 (citing 42 U.S.C. § 233(a)).

In *Cuoco v. Moritsugu*, the Second Circuit rejected the plaintiff's argument that § 233(e) only provides immunity from medical malpractice claims because there is "nothing in the language of § 233(a) to support that conclusion." *Cuoco*, 222 F.3d at 108. The Second Circuit stated that "[w]hen Congress has sought to limit immunity to medical malpractice claims it has done so explicitly." *Id.* (citing 38 U.S.C. § 7316(a)(1)) (explaining Congress' decision to make the FTCA the exclusive remedy for claims arising out of medical malpractice and negligence for healthcare providers working for the Veterans Health Administration); *see also Teresa T. v. Ragaglia*, 154 F. Supp. 2d 290, 299 (D. Conn. 2001) ("Nothing in the statute suggests that the immunity it provides is limited to negligence actions only"); *K.R. ex rel. Perez v. Silverman*, No. 08-CV-2192, 2009 WL 2959580, *7 (E.D.N.Y. Aug. 13, 2009) ("[T]he plain language of the statute—'resulting from the performance of medical . . . or related functions'—indicates that it covers more than garden variety medical malpractice claims"). Plaintiff has not provided any legal support for her argument that § 233 applies only to medical malpractice or negligence claims. *See* Dkt. No. 107 at 16-18. Therefore, the Court will not exclude from the statute's

application claims of alleged assault and battery, provided the requirements of the provision are met—the tortious conduct was within the scope of one's employment and was a part of "medical . . . or related functions." 42 U.S.C. § 233(a).

"[I]n cases involving a use of force, whether an employee is acting within the scope of employment requires consideration of whether the employee was authorized to use force to effectuate the goals and duties of the employment." *Rivera v. State of New York*, 34 N.Y.3d 383, 390 (2019) (citing *Sauter v. New York Tribune, Inc.*, 305 N.Y. 442, 445 (1953)). In professions "for which some physical contact with others is permissible or even expected, it may be difficult to determine whether a challenged action falls far enough outside the boundaries attendant to the employment relationship such that the employee should be solely liable for their respective tortious conduct." *Id*. Nonetheless, "[a]n employer will not be responsible for the torts of an employee who is not acting in furtherance of his employer's business or who acts only on personal motives." *A.W. by E.W. v. New York Dep't of Educ.*, 702 F. Supp. 3d 46, 53 (E.D.N.Y. 2023) (citing *N.X. v. Cabrini Med. Ctr.*, 97 N.Y.2d 247, 251 (2002)) (holding that a hospital employee who sexually assaulted a patient was acting his outside scope of employment because the employee acted wholly on personal motives). However, even in cases which may involve personal motives "it is 'well established that intentional torts may still fall within the scope of employment, and the motivation for such conduct . . . is but one of several for [the court's] consideration pertaining to whether such acts were foreseeable as "a natural incident of the employment."'" *Id.* (quoting *M.K. v. State*, 216 A.D.3d 139, 143 (3d Dep't 2023)) (additional quotation omitted).

New York courts have held that claims of assault, when acted upon from personal motives, are generally outside the scope of one's employment. *See e.g.*, *Judith M. v. Sisters of*

12

*Charity Hosp.*, 93 N.Y.2d 932, 933 (1999) (concluding that a hospital orderly who sexually assaulted a patient was acting outside the scope of employment when giving a patient a bath); *Montalvo v. Episcopal Health Servs., Inc.*, 172 A.D.3d 1357, 1360 (2d Dep't 2019) (holding that doctor's alleged sexual assault "is not in furtherance of an employer's business and is a clear departure from the scope of employment, having been committed for wholly personal motives"); *Boatman v. Cnty. of Onondaga*, 229 A.D.3d 1214, 1215 (4th Dep't 2024) (determining that probation officer's alleged sexual assault of the plaintiff was outside the scope of employment); *Fernandez v. Rustic Inn, Inc.*, 60 A.D.3d 893, 897 (2d Dep't 2009) (holding that a Home Depot employee who assaulted the plaintiff with a box cutter after a holiday party was an act "committed for personal motives unrelated to the furtherance of his employment"); *Maldonado v. Allum*, 208 A.D.3d 470, 472 (2d Dep't 2022) (holding that a pizza delivery driver who kicked and flailed while a police officer ticketed him for a broken headlight was acting outside the scope of his employment and not in furtherance of his employer's business).

Here, the Government argues that "[t]here is no question that [Defendant] Biss was 'acting in furtherance of her employer's work' at the time she assisted in Plaintiff's medical procedure." Dkt. No. 109 at 5. The Government contends that Plaintiff has not presented a credible basis to assert that Defendant Biss was acting on personal motives and not in the furtherance of her employer's business in providing patient care. *See* Dkt. No. 93-1 at 7. The Government also notes that "'courts have routinely honored certifications under the FTCA even for intentional tortious conduct as long as the defendants were acting in furtherance of Government business.'" *Id.* (quoting *Lipkin v. U.S. S.E.C.*, 468 F. Supp. 2d 614, 623 (S.D.N.Y. 2006)); *see e.g.*, *Asto v. Mirandona*, 372 F. Supp. 2d 702, 710 (E.D.N.Y. 2005) (honoring certification as alleged defamatory statements were made within the scope of defendant's employment with a federal

13

agency); *Catania v. Herbst*, 919 F. Supp. 2d 266, 272 (E.D.N.Y. 2013) (honoring certification in part because the plaintiff did not sufficiently establish that the defendant was acting on personal motives in making allegedly defamatory statements); *Smith v. Brown*, 296 F. Supp. 3d 648, 659 (S.D.N.Y. 2017) (upholding the Government's certification that the defendant was acting within scope of employment where the defendant physically assaulted the plaintiff at a work party as the plaintiff had not sufficiently shown defendant acted on personal motives or animosity).

Plaintiff argues that Defendant Biss' actions, though they occurred while she was on duty at GFH as an employee of HHHN, did not occur within the scope of her employment. *See* Dkt. No. 107 at 12. Plaintiff applies the *Riviello* factors to argue that Defendant Biss' actions, allegedly constituting assault and battery, were taken outside the scope of her employment, but Plaintiff makes no mention of any personal motivation influencing Defendant Biss' conduct. *See id.* at 14. Plaintiff argues that despite the location of the event,

> [a]ll other factors that can be gleaned from the Court submissions demonstrate that Defendant Biss was not, in fact, acting within the scope of her employment: patients who have all mental capacities are *not* commonly held down by their legs and subject to sharp objects inserted into their bodies *against their will* by medical providers at a hospital (third factor); such forceful, violent, and unauthorized procedures, against a patient's will, certainly depart from normal methods of performance by nurse midwives (fourth factor); and those acts would not (or should not) have been reasonably anticipated by any medical provider's employer (fifth factor) . . . . Here, not only does the fifth factor weigh in favor of finding that Defendant Biss was acting outside the scope of her employment when she engaged in the conduct at issue in this case, but facts and allegations pertaining to other factors (third and fourth) do as well.

*See id.* at 14 (emphasis in original).

Plaintiff fails to present a single legal or medical citation to support her contentions. Rather, "[v]aginal childbirth frequently causes tears or lacerations of the mother's vagina and

14

surrounding perineal (i.e., the area between the anus and the vagina) tissue." *Woodman v. United States*, 602 F. Supp. 3d 265, 274 (D.N.H. 2022); *see also* Cleveland Clinic, *Vaginal Tears During Childbirth*, HEALTH LIBRARY, (Aug. 1, 2025, 10:46 AM), https://my.clevelandclinic.org/health/diseases/21212-vaginal-tears-during-childbirth ("Up to 90% of women who give birth will have some tearing during a vaginal delivery . . . . Providers treat most tears right in the delivery room"). Because the alleged assault and battery occurred while Defendant Biss was on duty at GFH and while conducting a medical procedure, the Court finds that Plaintiff has failed to establish by a preponderance of the evidence that Defendant Biss acted outside the scope of her employment.

### D.     "Medical . . . or Related Functions" Under 42 U.S.C. § 233(a)

Plaintiff also argues that substitution is barred because, "[o]nce [she] voiced her lack of consent, Defendant Biss was no longer performing any medical function." Dkt. No. 107 at 11. The Government disagrees and asserts "that Plaintiff's allegation of assault and battery against Ms. Biss arise from her 'performance of medical . . . or related functions'" because Defendant Biss' "conduct took place at GFH during the course of a medical 'procedure' to 'repair [Plaintiff's] torn vaginal area' following delivery." Dkt. No. 93-1 at 8 (quoting Dkt. No. 14 at ¶ 40).

"In construing the terms of a statute, [courts] look first to its language to ascertain its plain meaning." *Cheung v. United States*, 213 F.3d 82, 89 (2d Cir. 2000) (citing *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997)). "Because the [FTCA] does not define any of the relevant terms, the 'starting point' is the 'statute's plain meaning,' which is driven by the 'ordinary, common-sense meaning' of its terms and 'the specific context in which that language is used.'" *Krandle v. Refuah Health Ctr., Inc.*, No. 22-CV-4977, 2024 WL 1075359, *3 (S.D.N.Y. Mar. 12, 2024) (quoting *Eisenhauer v. Culinary Inst. of Am.*, 84 F.4th 507, 517 (2d Cir. 2023)). "If the text 'is not entirely clear, [courts] then turn to the broader statutory context and its history.'" *Id.* (quoting *New York*

*Legal Assistance Grp. v. Bd. of Immigr. Appeals*, 987 F.3d 207, 216 (2d Cir. 2021)). "If the text remains ambiguous after that analysis, the Court turns 'to traditional canons of statutory construction for guidance in resolving the ambiguity.'" *Id.* (quoting *Williams v. MTA Bus Co.*, 44 F.4th 115, 127 (2d Cir. 2022)).

In *Cuoco*, the Second Circuit relied on the fact that a physician's alleged tortious conduct occurred "in the course of rendering medical treatment" in his capacity as a physician in determining that § 233(a) applied. *Cuoco*, 222 F.3d at 109. A court out of the Southern District of New York has used the Oxford English Dictionary definition of "medical" as "'related to the . . . practice of medicine,' i.e. the 'treatment or diagnosis' of a sick person . . . " in analyzing this issue. *Krandle*, 2024 WL 1075359, at *4 (citing *Medical, Medicine*, Oxford English Dictionary (3d Ed. 2001)). That court concluded that "the plain meaning of 'medical . . . or related functions' appears to cover the performance of activities with an established relationship to the practice of treating or diagnosing patients." *Id.* at *6. Additionally, immunity has been granted for "performance of functions related to medical services." *Rivera v. Federal Bureau of Prisons*, 368 F. Supp. 3d 741, 745 (S.D.N.Y. 2019); *see also Mele v. Hill Health Ctr.*, No. 3:06-CV-455, 2008 WL 160226, *3 (D. Conn. Jan. 8, 2008) (granting coverage for conduct that "concern[s] the medical functions of providing treatment" under § 233(a)). Immunity has been extended, as well, to duties that are "inextricably woven into [the] performance of medical functions." *Teresa T.*, 154 F. Supp. 2d at 300; *see also Marshall v. Lamoille Health Partners, Inc.*, No. 2:22-CV-166, 2023 WL 2931823, *4 (D. Vt. Apr. 13, 2023) (noting how immunity can be applied to activity that is interwoven with providing direct medical care such as hiring practices or adhering to mandated reporting statutes).

Here, Plaintiff cites New York case law to support her argument that the conduct of a

16

healthcare provider, if performed without the patient's consent, may constitute battery; however, that case law does not demonstrate that Defendant Biss' conduct was not a medical function under the plain meaning of § 233(a). *See* Dkt. No. 107 at 18 (citing *Messina v. Matarrasso, M.D. F.A.C.S. P.C.*, 284 A.D.2d 32, 34-35 (1st Dep't 2001); *VanBrocklen v. Erie Cnty. Med. Ctr.*, 96 A.D. 1394, 1394 (4th Dep't 2012); *Young v. Sethi*, 188 A.D.3d 1339, 1342 (3d Dep't 2020)). As noted by the Government, Plaintiff concedes in her Amended Complaint that Defendant Biss was at GFH as an HHHN employee and working as a Certified Nurse Midwife to provide medical care when she interacted with Plaintiff. *See* Dkt. No. 93-1 at 8 (citing Dkt. No. 14 at ¶¶ 12, 24, 33, 37, 40). Additionally, Plaintiff notes in her Amended Complaint that when she went into labor, she "immediately reached out to [HHHN] (an entity that works with GFH to provide midwives during delivery at GFH)." Dkt. No. 14 at ¶ 24. Plaintiff fails to explain how Defendant Biss' actions of suturing a vaginal tear following childbirth is not an activity with "an established relationship to the practice of treating or diagnosing patients." *Krandle*, 2024 WL 1075359 at *6; *see also Cuoco*, 222 F.3d at 107. The Court concludes that such conduct constitutes a medical function pursuant to § 233(a). The Court, therefore, grants the Government's motion to substitute under § 233(a).[3]

---

[3] Plaintiff requests in the alternative, that the Court hold an evidentiary hearing on the scope of employment issue. Generally, "'[t]he court may resolve the disputed jurisdictional fact issues by referring to evidence outside of the pleadings, such as affidavits, and if necessary, hold an evidentiary hearing.'" *Fountain*, 838 F.3d at 134 (quoting *Zappia Middle E. Constr. Co. v. Emirate of Abu Dhabi*, 215 F.3d 247, 253 (2d Cir. 2000)). Additionally, the Supreme Court has recognized the "possibility for overlap, mainly in cases alleging intentional torts, between the validity of the scope-of-employment certification and the merits of a plaintiff's claim, as well as the potential need for the district court to make credibility determinations[]" which may warrant an evidentiary hearing. *Tangorre v. Victim*, No. 1:24-CV-388, 2024 WL 4979169, *6 (N.D.N.Y. Dec. 4, 2024) (citing *Osborn*, 549 U.S. at 251-52). Here, Plaintiff has not presented any credibility issues, and the Government does not dispute the material facts presented by Plaintiff. Therefore, Plaintiff's request for an evidentiary hearing is denied.

### E. Dismissal on Lack of Subject Matter Jurisdiction

"[A]lthough the . . . FTCA . . . provides a limited waiver of sovereign immunity from suit for tort claims against the United States, it has strict exhaustion requirements and the burden is on the plaintiff to both plead and prove compliance with the FTCA's statutory exhaustion requirements." *Mahmood v. United States*, No. 1:20-CV-207, 2020 WL 1808206, *2 (N.D.N.Y. Apr. 9, 2020) (citing *In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 210, 214 (2d Cir. 1987)). "Under the FTCA, before a claimant can file suit, he or she must first present the claim to the appropriate federal agency (in this case HHS) within two years of the date the claim accrued." *Phillips v. Generation Fam. Health Ctr.*, 723 F.3d 144, 147 (2d Cir. 2013) (citing 28 U.S.C. § 2401(b)). "The claimant can only initiate his or her lawsuit once the claim has been denied by the agency (or if the agency has failed to make a decision within six months after the claim was filed)." *Id.* (citing 28 U.S.C. § 2675(a)). "Final denial by the appropriate federal agency is a jurisdictional prerequisite to adjudication under the FTCA." *Roberge v. McAndrew*, No. 1:15-CV-1522, 2016 WL 3248400, *3 (N.D.N.Y. June 13, 2016) (citing 28 U.S.C. § 2675(a)); *see also Keene Corp. v. United States*, 700 F.2d 836, 841 (2d Cir. 1983); *Williams v. Metro. Det. Ctr.*, 418 F. Supp. 2d 96, 102 (E.D.N.Y. 2005).

Here, Plaintiff did not submit any claim to HHS. *See* Dkt. No. 93-4 at ¶ 4. She instead argues that administrative remedies are not required because substitution is improper. S*ee* Dkt. No. 107 at 18-19. However, this Court has already concluded that substitution is appropriate. The Supreme Court has "definitively held that '[t]he FTCA bars claimants from bringing suit in federal court until they have exhausted their administrative remedies." *Roberge*, 2016 WL 3248400 at *4 (quoting *McNeil v. United States*, 508 U.S. 106, 113 (1993)). Because Plaintiff has not filed a claim with HHS within two years of when the claim accrued, she has failed to exhaust

18

her administrative remedies. *See* 28 U.S.C. § 2401(b). Based on the foregoing, the Government's motion to dismiss for lack of subject matter jurisdiction is granted.

F.     **Motion for Joinder and Leave to Amend Answer**

On April 30, 2025, GFH Defendants filed a motion for joinder and leave to amend their answer, seeking to bring a third-party complaint against HHHN. *See* Dkt. No. 122. GFH Defendants assert that HHHN is Defendant Biss and Bennett's employer; therefore, "[t]o the extent that the GFH Defendants are found liable to Plaintiff, the GFH Defendants intend to seek contribution and indemnity against HHHN, Defendant Biss, and Defendant Bennett for their involvement in the same underlying set of facts and circumstances, and for their role in supervising and providing Plaintiff with medical care." *Id.* at 5. Defendant Biss and Plaintiff oppose the motion. *See* Dkt. Nos. 127, 128.

In their proposed amended answer, GFH Defendants acknowledge that, at the time of Plaintiff's labor and delivery, Defendant Bennett was a student nurse midwife. *See* Dkt. No. 122-4 at ¶ 13. As part of their cross claims, GFH Defendants contend that "[u]pon information and belief, Plaintiff was aware that at all relevant times, Defendant Bennett was a student nurse midwife acting under the authority of Defendant Biss." *Id.* at ¶ 176. They allege that "[t]he GFH Defendants were acting under Defendant Biss' control and authority, and as such, liability falls upon Defendant Biss." *Id.* at ¶ 190.

As a result of this Memorandum-Decision and Order, Defendant Biss is being dismissed from the case. Therefore, within fourteen (14) days of the filing of this Memorandum-Decision and Order, GFH Defendants shall file a letter with the Court, no more than two pages in length, explaining whether their motion for joinder and leave to amend is mooted by this decision.

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that the Government's motion to substitute and to dismiss (Dkt. No. 93) is **GRANTED**; and the Court further

**ORDERS** that the Clerk of the Court shall substitute the United States of America as the Defendant for Lynette M. Biss; and the Court further

**ORDERS** that Plaintiff's claims for assault and battery against the United States are **DISMISSED without prejudice** and the United States is **DISMISSED** from this action; and the Court further

**ORDERS** that within **fourteen (14) days** of the filing of this Memorandum-Decision and Order, GFH Defendants shall file a letter with the Court not to exceed two pages explaining how this decision impacts their currently pending motion for joinder and leave to amend (Dkt. No. 122); and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: August 18, 2025
      Albany, New York

_____
Mae A. D'Agostino
U.S. District Judge