**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

**NICOLE COSTIN,** *individually and on behalf of*
*her minor son, BABY A,*

                                **Plaintiff,**

       **vs.**                                                     1:22-CV-296
                                                     (MAD/CFH)

**GLENS FALLS HOSPITAL, KEVIN M. GRASSI, M.D.,**
**STACY L. RALPH, KAREN RANTTILA,**
**JENNIFER NIX, AMY HOOPER, JODIE SMITH,**
**STEPHANIE DECHENE, and ALYCIA N. GREGORY,**

                                **Defendants.**

---

| **APPEARANCES:** | **OF COUNSEL:** |
|---|---|
| **MCDERMOTT WILL & SCHULTE LLP**<br>919 Third Avenue<br>New York, New York 10022<br>Attorneys for Plaintiff | **TALEAH E. JENNINGS, ESQ.**<br>**WILLIAM H. GUSSMAN, ESQ.**<br>**JULIA BESKIN, ESQ.**<br>**SHANNON B. WOLF, ESQ.**<br>**SKYLAR KLEIN, ESQ.**<br>**YANA HOLDEN, ESQ.** |
| **WHITEMAN OSTERMAN & HANNA LLP**<br>One Commerce Plaza<br>Suite 1900<br>Albany, New York 12260<br>Attorneys for Defendants Glens Falls<br>Hospital, Kevin M. Grassi M.D., Stacey<br>L. Ralph, Jennifer Nix, Amy Hooper,<br>Jodie Smith, Stephanie Dechene, and<br>Alycia N. Gregory | **ROBERT S. ROSBOROUGH, IV ESQ.**<br>**JENNIFER MARIE YETTO, ESQ.**<br>**JUSTINE M. CASE-FITZGERALD**<br>**ESQ.** |
| **REBAR KELLY**<br>470 Norristown Road, Suite 201<br>Blue Bell, Pennsylvania 19422<br>Attorneys for Defendant Karen Ranttila | **CATHLEEN KELLY REBAR, ESQ**<br>**PATRICK J. HEALEY, ESQ.** |
| **OFFICE OF THE UNITED**<br>**STATES ATTORNEY**<br>James T. Foley U.S. Courthouse | **KAREN FOLSTER LESPERANCE,**<br>**AUSA** |

445 Broadway, Room 218
Albany, New York 12207
Attorney for Terminated Defendant United States
*formerly known as* Lynette M. Biss

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

This case has been pending since March 28, 2022, when Plaintiff Nicole Costin filed a complaint against numerous medical professionals and entities on behalf of herself and her minor son, Baby A, related to actions that occurred before, during, and after Plaintiff gave birth to Baby A at Glens Falls Hospital ("GFH"). *See* Dkt. No. 1. Plaintiff filed an amended complaint on June 23, 2022. *See* Dkt. No. 14.

Presently before the Court is Defendants' Glens Falls Hospital, Kevin M. Grassi M.D., Stacy L. Ralph, Jennifer Nix, Amy Hooper, Jodie Smith, Stephanie Dechene, and Alicia N. Gregory (collectively, the "GFH Defendants") motion for leave to (1) file a third-party complaint pursuant to Federal Rule of Civil Procedure 14 against Hudson Headwaters Health Network ("HHHN"), as the employer of Defendants Lynette M. Biss and Nicole Bennett; and (2) amend their answer to assert related cross-claims against Defendants Biss and Bennett pursuant to Federal Rule of Civil Procedure 15. *See* Dkt. No. 122. The United States, on behalf of HHHN, and Plaintiff responded in opposition. *See* Dkt. Nos. 127, 128.

### II. BACKGROUND

The Court will reiterate only those facts and procedural information necessary for resolution of the pending motion. The facts are derived from Plaintiff's amended complaint (the

2

"complaint"), *see* Dkt. No. 14, and the GFH Defendants' proposed third-party complaint, *see* Dkt. No. 122-3.

On March 29, 2021, Plaintiff's water broke, and she contacted HHHN "an entity that works with GFH to provide midwives during delivery at GFH," which informed her go to GFH. Dkt. No. 14 at ¶ 24. Prior to that day, Plaintiff's birthing "plan was simple: she would deliver at GFH, [her partner] would be in the delivery room with her . . . , she would deliver vaginally, and most importantly, she would be given an epidural injection." *Id.* at ¶ 25.

When Plaintiff arrived at GFH, she was first met by Defendant Ralph, a registered nurse and GFH employee. *See id.* at ¶ 26. Plaintiff spoke with Defendant Ralph about her medical history, including whether Plaintiff was taking any medications. *See id.* at ¶¶ 27-28. Plaintiff told Defendant Ralph "that she was taking 8 milligrams of Subutex twice a day, which was prescribed by her primary care physician for her disability. Subutex is a treatment medication for individuals with certain disabilities, including substance abuse disorder." *Id.* at ¶ 28.

When GFH staff changed shifts, Defendant "Ralph met with the incoming nurse, [Defendant] Ranttila, and updated her with information about [Plaintiff]. One of the first pieces of information she shared was the fact that [Plaintiff] was taking Subutex." *Id.* at ¶ 31. Defendant Ranttila is a GFH employee. *See id.* at ¶ 11. Defendant Ralph stated she was waiting for results from a urine toxicology screen. *See id.* at ¶ 32. "No one had informed [Plaintiff] that the hospital was performing a drug test on her urine." *Id.* Plaintiff's contractions worsened and she asked Defendant Ranttila for an epidural. *See id.* at ¶ 33. Defendant Ranttila told Plaintiff "that the hospital's anesthesiologist was on call and that she would contact him to get the epidural process started. Throughout Nurse Ranttila's shift, Nurse Midwife Biss and Nurse Midwife Bennett periodically entered [Plaintiff's] hospital room to check her dilation." *Id.* Defendants

3

Biss and Bennett were employees of HHHN and Defendant Bennett was a student midwife at the time. *See id.* at ¶¶ 12-13.

Defendant Ranttila told Plaintiff she called the anesthesiologist. *See id.* at ¶ 34. Defendant Bennett informed Plaintiff that her toxicology screen was positive for cocaine and PCP. *See id.* Plaintiff asked Defendant Ranttila to re-do the toxicology panel and for an epidural. *See id.* at ¶¶ 34-35. Defendant Ranttila collected a second urine sample and informed Plaintiff that "GFH drug tests pregnant women who take Suboxone or Subutex 'all the time.'" *Id.* at ¶ 35. Defendant Bennett informed Plaintiff that the second urine sample tested negative for illegal substances. *See id.* at ¶ 36. Defendant "Ranttila then informed [Plaintiff] that GFH was withholding the epidural, and she would not be receiving it." *Id.* at ¶ 36.

Defendant Biss entered Plaintiff's room and reiterated the same: GFH would not be giving Plaintiff an epidural. *See id.* at ¶ 37. "As she said this, other GFH nurses connected bags of unidentified fluids to [Plaintiff's] IV drip. [Plaintiff] asked again for the epidural. [Defendant] Ranttila stated that they were waiting for her to 'finish the bag' they had connected to her IV and started squeezing on the bag." *Id.* Plaintiff then entered eight hours of labor during which "GFH refused [Plaintiff's] pleas for an epidural, ignored her request to withhold the Pitocin absent an epidural and provided her with no pain relief." *Id.* at ¶ 38.

After giving birth to Baby A, Defendant Ranttila took Baby A away from Plaintiff and Defendants Biss and Bennett began repairing Plaintiff's vaginal tear. *See id.* at ¶ 40. Plaintiff alleges that "[n]either Nurse Midwife Biss nor Nurse Midwife Bennett numbed the area prior to beginning the repairs, so [Plaintiff] was in excruciating pain." *Id.* Additionally, "[a]s [Plaintiff] protested, she could feel a needle entering and exiting her body. Moreover, she could see that Nurse Midwife Bennett (who, again, was a student at the time) was performing the procedure,

despite [Plaintiff's] repeated insistence upon entering the Snuggery that no student perform any medical examinations or procedures on her." *Id.* "Nurse Midwife Biss and Nurse Midwife Bennett continued the procedure through completion." *Id.*

Plaintiff's complaint contains no further allegations against Defendant Biss or Bennett. Plaintiff contends that, after the birth, the GFH Defendants drug tested Baby A, would not let Plaintiff leave the hospital, would not release Baby A to Plaintiff, contacted Child Protective Services, and falsified medical records. *See id.* at ¶¶ 41-68. Plaintiff alleges a single cause of action against Defendants Biss and Bennett for assault and battery under New York law. *See id.* at ¶¶ 121-24. She alleges ten causes of action against some combination of the GFH Defendants for discrimination and various torts. *See id.* at ¶¶ 76-120, 125-42.

On July 10, 2024, the GFH Defendants filed their answer and denied nearly all of Plaintiff's allegations. *See* Dkt. No. 70. In their second affirmative defense, the GFH Defendants stated as follows:

> Plaintiff['s complaint] fails to name a necessary party including, without limitation, the United States of America; Plaintiffs' medical providers during labor and delivery, as well as during Plaintiff Costin's pregnancy and prenatal care, included physicians and certified nurse midwives employed by Hudson Headwaters Health Network ("HHHN").
>
> HHHN is a federally qualified Health Center (FQHC) deemed by the Secretary of Health and Human Services to be part of the United States Public Health Services and HHHN's employees are deemed Public Health Service employees under 42 U.S.C. § 233(g)-(n) covered under the Federal Tort Claims Act. . . .

*Id.* at 22 (spacing added) (citation omitted).

A few weeks after the GFH Defendants filed their answer, Defendants Ranttila and Bennett separately moved to dismiss Plaintiff's complaint. *See* Dkt. Nos. 72, 73. Plaintiff

5

opposed both motions. *See* Dkt. Nos. 75, 76. The Court denied both motions. *See* Dkt. No. 83. Defendants Ranttila and Bennett then filed their answers to Plaintiff's complaint. *See* Dkt. Nos. 90, 91.

On January 8, 2025, the United States, on behalf of Defendant Biss filed a motion to (1) substitute itself as the proper party because Defendant Biss was acting as an employee of HHHN during the relevant period, and (2) dismiss the claim against Defendant Biss/the United States for plaintiff's failure to exhaust her administrative remedies under the Federal Tort Claims Act ("FTCA"). *See* Dkt. No. 93. In opposing the motion, Plaintiff argued Defendant Biss was acting outside the scope of her employment when she allegedly committed the assault and battery on Plaintiff; therefore, Defendant Biss can be held personally liable, and the United States should not be named as a Defendant. *See* Dkt. No. 107.

On February 5, 2025, the GFH Defendants filed a memorandum of law in response to the United States' motion. *See* Dkt. No. 108. The GFH Defendants did not oppose the United States' motion but stated as follows:

> [T]o the extent that Plaintiff's claims under the Americans with Disability Act and the Rehabilitation Act may be broadly construed to allege involvement of Defendant Biss in the implementation of the allegedly discriminatory GFH policies, and to ensure the continued viability of the GFH Defendants' cross claims against Defendant Biss, Hudson Headwaters Health Network, or the United States for indemnification and/or contribution, which the GFH Defendants intend to serve shortly.

*Id.* at 6. The GFH Defendants asserted that they would be entitled to indemnification and contribution from United States if the Court permitted substitution. *See id.* at 13. The GFH Defendants noted that they "intend[ed] to" raise such a claim. *Id.* They then filed a revised memorandum on March 10, 2025, asserting the same. *See* Dkt. No. 117.

6

On April 30, 2025, the GFH Defendants filed their presently pending motion for joinder and leave to amend seeking to bring HHHN into the case and file crossclaims against Defendants Biss and Bennett. *See* Dkt. No. 122. The United States and Plaintiff filed their oppositions while the Court was deciding the United States' motion for substitution and dismissal. *See* Dkt. Nos. 127, 128.

On August 18, 2025, the Court granted the United States' motion to substitute itself for Defendant Biss because Defendant Biss was an employee of HHHN, which is a federal entity. *See* Dkt. No. 139. The Court expressly concluded that "[b]ecause the alleged assault and battery occurred while Defendant Biss was on duty at GFH and while conducting a medical procedure, . . . Plaintiff has failed to establish by a preponderance of the evidence that Defendant Biss acted outside the scope of her employment." Dkt. No. 139 at 15. The Court ordered the Clerk of the Court to substitute the United States for Defendant Biss and dismiss the single claim that had been brought against Defendant Biss for Plaintiff's failure to exhaust her administrative remedies under the FTCA. *See id.* at 18-20. Because the Court dismissed the only claim Plaintiff brought against Defendant Biss, it ordered the GFH Defendants to file a letter "explaining how this decision impacts their currently pending motion for joinder and leave to amend." *Id.* at 20.

On September 1, 2025, the GFH Defendants complied with the Court's order and filed a letter stating as follows:

> [T]heir motion to join HHHN as a third-party Defendant is still justiciable, as is the portion of their motion seeking leave to amend their answer and add cross-claims against Defendant Bennett, and would respectfully request that the portion of their motion to amend their answer to assert cross-claims against former-Defendant Biss be converted to a motion to join Ms. Biss as a third-party defendant.

Dkt. No. 140. On February 26, 2026, Defendant Bennett was dismissed from this action based on a stipulation between Plaintiff and Defendant Bennett. *See* Dkt. Nos. 148, 152, 153.

Therefore, the two named Defendants against whom the GFH Defendants initially sought to name as cross-claimants have been dismissed from the case. The United States has also been dismissed from the action. As such, the pending inquiry is whether the GFH Defendants should be permitted to file a third-party complaint against HHHN, Defendant Biss and/or Defendant Bennett in which they would be joined as third-party defendants. The GFH Defendants do not request permission to file a third-party claim against the United States. *See* Dkt. Nos. 122, 140.

For the reasons that follow, the GFH Defendants' motion is denied.

## III. DISCUSSION

### A.    Standard of Review

"Rule 14(a) governs third party practice in federal court." *iBasis Glob., Inc. v. Diamond Phone Card, Inc.*, 278 F.R.D. 70, 73 (E.D.N.Y. 2011). Rule 14 states as follows:

> A defending party may, as third-party plaintiff, serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it. But the third-party plaintiff must, by motion, obtain the court's leave if it files the third-party complaint more than 10 days after serving its original answer.

FED. R. CIV. P. 14(a).

"It is well-settled that a third-party action, also known as an impleader action, must be dependent on, or derivative of, the main claim." *iBasis Glob.*, 278 F.R.D. at 74 (citing *Bank Of India v. Trendi Sportswear, Inc.*, 239 F.3d 428, 438 (2d Cir. 2000)). "Impleading a third-party is appropriate where the third-party defendant's liability to the third-party plaintiff [is] dependent upon the outcome of the main claim or the third-party defendant [is] "potentially secondarily liable as a contributor to the defendant." *Id.* (quoting *Falcone v. MarineMax, Inc.*, 659 F. Supp.

8

2d 394, 402 (E.D.N.Y. 2009); *Kenneth Leventhal & Co. v. Joyner Wholesale Co.*, 736 F.2d 29, 31 (2d Cir. 1984)) (quotation marks omitted).

"The traditional grounds for a third-party action are indemnification, contribution, or subrogation." *Id.* (citing *Int'l Paving Sys. Inc. v. Van-Tulco, Inc.*, 866 F. Supp. 682, 687 (E.D.N.Y. 1994); *Telecom Intern. America, Ltd. v. AT & T Corp.*, No. 96-CV-1366, 1999 WL 777954, at *4 (S.D.N.Y. Sept. 30, 1999)). "Regardless of the type of claim asserted, '[t]he outcome of the third-party claim must be contingent on the outcome of the main claim.'" *Id.* (quoting *Nat'l Bank of Canada v. Artex Indus., Inc.*, 627 F. Supp. 610, 613 (S.D.N.Y. 1986)).

> "Factors relevant to determining whether to grant leave to implead a third party include:
>
> (a) whether the moving party deliberately delayed or was derelict in filing the motion; (b) whether impleading would unduly delay or complicate the trial; (c) whether impleading would prejudice the plaintiff or the third-party defendant; and (d) whether the proposed third-party complaint states a claim upon which relief can be granted."

*Id.* (quoting *Capitol Records, Inc. v. City Hall Records, Inc.*, No. 07-CV-6488, 2008 WL 2811481, at *3 (S.D.N.Y. July 18, 2008)) (spacing added).

"Rule 14(a) was designed 'to promote judicial economy by eliminating the need for a defendant to bring a separate action against a third-party who may be secondarily or derivatively liable to the defendant for all or part of the plaintiff's claim.'" *Id.* (quoting *Hines v. Citibank*, *N.A.*, No. 96-CV-2565, 1999 WL 440616, *2 (S.D.N.Y. June 28, 1999)). "'Timely motions for leave to implead non-parties should be freely granted to promote [judicial] efficiency unless to do so would prejudice the plaintiff, unduly complicate the trial, or would foster an obviously unmeritorious claim.'" *Id.* (quoting *Fashion-In-Prints, Inc. v. Salon, Marrow & Dyckman, L.L.P.*, No. 97-CV-340, 1999 WL 500149, *6 (S.D.N.Y. July 15, 1999)). "'Although Rule 14(a)'s

9

purpose is to promote judicial economy, . . . the right to implead third parties is not automatic, and the decision whether to permit impleader rests within the sound discretion of the district court.'" *Id.* (quoting *Consolidated Rail Corp. v. Metz*, 115 F.R.D. 216, 218 (S.D.N.Y. 1987)).

"While Federal Rule of Civil Procedure 14 allows for the joinder of such claims, it also grants district courts 'considerable discretion in deciding whether to permit a third-party complaint.'" *Doe 1 v. JPMorgan Chase Bank, N.A.*, 687 F. Supp. 3d 405, 416 (S.D.N.Y. 2023) (quoting *Too, Inc. v. Kohl's Dep't Stores, Inc.*, 213 F.R.D. 138, 140 (S.D.N.Y. 2003)). "Among the factors a court is to consider in resolving such a motion is 'whether impleading would unduly delay or complicate the trial.'" *Id.* (citation omitted).

"The filing of amended and supplemental pleadings is governed by Rule 15 of the Federal Rules of Civil Procedure." *Reeder v. Uhler*, No. 9:16-CV-1161, 2018 WL 10038799, *2 (N.D.N.Y. May 21, 2018) (citing FED. R. CIV. P. 15). "Rule 15(a) states that leave to amend shall be freely given 'when justice so requires.'" *Id.* (quoting FED. R. CIV. P. 15(a)(2)) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Manson v. Stacescu*, 11 F.3d 1127, 1133 (2d Cir. 1993)). Generally,

> In the absence of any apparent or declared reason – such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. – the leave sought should . . . be "freely given."

*Id.* (quoting *Foman*, 371 U.S. at 182). "An amendment or supplementation of a pleading is considered a 'futile' act when the proposed claim would not withstand a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure." *Id.* (quoting *Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 88 (2d Cir. 2002)). "The decision to grant or

10

deny a motion to amend or supplement is committed to the sound discretion of the trial court, and the court's decision is not subject to review on appeal except for abuse of discretion." *Id.* (citing *Fielding v. Tollaksen*, 510 F.3d 175, 179 (2d Cir. 2007)).

**B.     Analysis**

The GFH Defendants argue that their motion is timely because they filed it by the deadline set forth in the Uniform Pretrial Scheduling Order "before a single deposition has been scheduled"; it would be more efficient to include the claims against HHHN now instead of in a subsequent law suit because "the risk of duplicative litigation, an increased burden on fact witnesses, and contradictory results is mitigated"; and "the proposed third-party complaint and proposed amended answer, submitted in conjunction with this motion, states valid causes of action under New York law for contribution and indemnification against the third-party defendant, HHHN and cross-claims against Defendants Biss and Bennett." Dkt. No. 122-1 at 6-7.

The crux of the GFH Defendants' motion is this: Defendants Bennett and Biss, who were employed by HHHN, were the ones responsible for Plaintiff's alleged injuries rather than the GFH Defendants. However, the GFH Defendants fail to explain why they did not earlier make their motion; introduction of their theory of liability would unnecessarily complicate trial and prejudice Plaintiff and the United States; and they have failed to sufficiently allege a claim for relief.

*1. Timeliness of Motion*

The GFH Defendants state that "this motion will come as no surprise to any party or non-party, as Defendants Biss and Bennett, employees of HHHN, are already named defendants in this litigation." Dkt. No. 122-1 at 12. "Moreover, as of February 5, 2025, in response to the United States' motion to substitute itself in as a party defendant in place of Defendant Biss, the GFH Defendants made clear that it was their intention to make this motion to allege claims for

contribution and indemnity against HHHN." *Id.* The GFH Defendants also contend "paper discovery is at its infancy in this case, depositions have yet to even be scheduled, and the deadline for fact discovery is not until October 15, 2025." *Id.*

It is true that GFH Defendants' motion was technically timely. The Uniform Pretrial Scheduling Order set the deadline for filing motions related to the joinder of parties and amended pleadings as April 30, 2025. *See* Dkt. No. 106. The GFH Defendants filed their motion on the very last day of the deadline, April 30, 2025, which makes it timely. *See* Dkt. No. 122.

However, as Plaintiff makes clear in her response and attached exhibits, the timing of the GFH Defendants motion appears delayed. *See* Dkt. No. 128 at 10. The GFH Defendants admitted in their motion that they anticipated filing it motion as early as February 5, 2025. *See* Dkt. No. 122-1 at 12. That was approximately four months before they filed the motion. *See id.* Plaintiff served her first requests for the production of documents on February 4, 2025. *See* Dkt. No. 128-1 at ¶ 2; Dkt. No. 128-2. Despite agreeing to numerous extensions, Plaintiff did not receive a single production of documents as of May 21, 2025, the filing of her response. *See* Dkt. No. 128 at 11; Dkt. No. 128-3. Discovery deadlines were then adjourned on September 26, 2025, pending resolution of the current motion. *See* Text Minute Entry 09/26/2025.

The GFH Defendants argue their motion is appropriate because "paper discovery is at its inception," Dkt. No. 122-1 at 13, but the Court agrees with Plaintiff that "[h]ad the GFH Defendants complied with the original deadline to respond, which was over two months ago, discovery would be well under way," Dkt. No. 128 at 11. As Plaintiff states, "the GFH Defendants have neither sent document requests, responded to Plaintiff's [requests for the production of documents], nor made any production of documents—including documents as straightforward as [Plaintiff's] medical records—which are critical to reaching any settlement."

12

*Id.* The GFH Defendants do not provide a single justification for failing to respond to Plaintiff's discovery requests before discovery deadlines were adjourned on September 26, 2025. *See* Dkt. No. 122-1 at 6, 12-14. Despite the GFH Defendants asserting their motion should "come as no surprise" because they indicated an intention to make it on February 5, 2025, they fail to explain why they waited until April 30, 2025—the last possible day to file. Dkt. No. 122-1 at 12.

In support of her argument that the GFH Defendants' motion should be denied, Plaintiff relies on the decision from Magistrate Judge Daniel J. Stewart in *Office Create Corp. v. 1st Playable Productions, LLC*, No. 1:23-CV-91 2024 WL 980061 (N.D.N.Y. Mar. 7, 2024). *See* Dkt. No. 128 at 12. In that case, Magistrate Judge Stewart concluded that permitting the filing of a third-party complaint would "undoubtedly cause significant delays which could have been avoided by a timelier filed motion." *Off. Create Corp.*, 2024 WL 980061, at *2. Magistrate Judge Stewart stated that although the "[d]efendants contend[ed] that adding them would not delay this matter because the case 'is in the very early stages of discovery, the parties have not even beg[u]n conducting discovery,'" the fact "[t]hat the parties had not yet even begun discovery more than forty five days after permitted to do so is more a cause for concern than a reason to permit additional pleadings." *Id*. The case was "already over a year old." *Id.*

This case is three years old.[1] The Court, therefore, agrees with Plaintiff that discovery being at its inception is a cause for concern more so than a reason to permit the filing of a third-party complaint. The Court finds this factor weighs against permitting the GFH Defendants to file their third-party complaint against HHHN.

---

[1] The Court recognizes that one reason contributing to the life of this case, which is not being held against any part, is that Plaintiff appealed a prior decision to the Second Circuit on March 17, 2023. *See* Dkt. No. 65. The appeal was decided on June 12, 2024. *See* Dkt. No. 67.

### *2. Whether Impleading Would Unduly Delay or Complicate Trial and Whether Impleading Would Prejudice Plaintiff or Third-Party Defendants*

The GFH Defendants argue that joinder of HHHN would not complicate the case but be in the interest of judicial economy because "Plaintiff's allegations involve both HHHN and GFH, as well as individuals from each HHHN and GFH, during the same time period, same location, and same triggering events.  As such, the allegations against GFH and HHHN are irrefutably intertwined."  Dkt. No. 122-1 at 15.

The GFH Defendants are correct that the facts underlying Plaintiff's complaint are similar to those alleged in their proposed third-party complaint; the complaints both relate to Plaintiff's labor and delivery of Baby A.  *See* Dkt. Nos. 14, 122-3.

However, as Plaintiff contends in her brief, if the Court permits the GFH Defendants to file the third-party complaint against HHHN and/or Defendants Biss or Bennett, "the testimony of the individual defendants involved in the birthing process would inevitably shift away from their treatment of [Plaintiff] and toward the hierarchy of [the] medical team."  Dkt. No. 128 at 14.  The Court agrees that "in order to understand the extent to which HHHN controlled the birthing process, it is likely that the parties would have to call as witnesses additional HHHN and GFH employees to testify about the relationship between the two entities, a topic which is flatly irrelevant to [Plaintiff's] claims."  *Id.*  And "a new legal issue—i.e., whether HHHN controlled GFH with respect to [Plaintiff's] birthing process—would be placed squarely before the Court."  *Id.* at 15.

The accuracy of Plaintiff's assertions is demonstrated through a closer look at her complaint and the GFH Defendant's proposed third-party complaint.  Throughout Plaintiff's complaint, she alleges that Defendants Biss and Bennett were employees of HHHN, *see* Dkt. No.

14

14 at ¶¶ 12-13, HHHN told Plaintiff to go to GFH after her water broke, *see id.* at ¶ 24, Defendant Bennett told Plaintiff her urine screen was positive for drugs, *see id.* at ¶ 34, Defendant Biss informed Plaintiff "that GFH was withholding the epidural," *id.* at ¶ 37, and Defendants Bennett and Biss repaired a vaginal tear without Plaintiff's consent and despite her objections, *see id.* at ¶ 40. All other allegations in Plaintiff's complaint concern the GFH Defendants including additional toxicology screenings of Plaintiff and Baby A, contacting Child Protective Services, declining to release Plaintiff and Baby A from the hospital, and falsifying medical records. Out of eleven causes of actions, Defendants Biss and Bennett are named in one. *See id.* at ¶¶ 121-24.

In the GFH Defendant's proposed third-party complaint, they allege "[a]ny actions or inactions taken or not taken by the GFH Third-Party Plaintiffs were done so under the authority, supervision, guidance, and/or direction of Defendant Biss." Dkt. No. 122-3 at ¶ 47. They assert that "[a]ll remaining Defendants were acting under Defendant Biss' control and authority." *Id.* at ¶ 53. The GFH Defendants allege "Defendant Biss was the nurse midwife overseeing and giving orders to GFH nursing employees during Plaintiff's delivery" and "[t]he GFH Third-Party Plaintiffs were merely following those directions." *Id.* at ¶¶ 63-64.

Plaintiff is correct that the addition of the GFH Defendants' allegations would expand the scope of this case from whether Plaintiff was discriminated against and harmed by the GFH Defendants' alleged negligence and malpractice to a determination about the hierarchical structure between a midwife or midwife student at a visiting hospital with staff of various rankings.

The United States, in their opposition to the motion, agrees. The United States contends that "[r]ather than increasing judicial efficiency, the addition of the United States would only delay and complicate this action as it would be forced to participate in discovery and litigation over allegations in a complaint which, for the most part, is not directed at it . . . ." Dkt. No. 127 at

15.  As the United States also points out, Plaintiff cannot litigate her case directly against the United States because the Court previously concluded Plaintiff failed to exhaust her administrative remedies under the FTCA and dismissed the United States from the case.  *See id.*; *see also* Dkt. No. 139 at 18-19.

Joining Defendants Biss, Bennett, or HHHN (or, really, the United States) would open discovery and the ultimate resolution of this case to a host of new issues such that joinder would complicate the case and prejudice Plaintiff and the third-party Defendants.  On the other hand, "[d]enying the motion will not prejudice [the GFH] defendants, because they are free to commence a separate action for contribution and/or indemnity against [HHHN] if they are ultimately found liable to plaintiff."  *Ecommission Sols., LLC v. CTS Holdings, Inc.*, No. 15-CV-2671, 2016 WL 6901318, *8 (S.D.N.Y. Nov. 23, 2016) (citing *Embassy Elecs., Ltd. v. Lumbermens Mut. Cas. Co.*, 108 F.R.D. 418, 421 (S.D.N.Y. 1985); *Oliner v. McBride's Indus., Inc.*, 106 F.R.D. 14, 21 (S.D.N.Y. 1985)).

### 3. Whether The Proposed Third-Party Complaint States a Claim

"In determining whether the third-party complaint states a claim upon which relief can be granted in a Rule 14 impleader analysis, courts consider the plausibility of the claims alleged."  *Montague v. Williams*, No. 21-CV-4054, 2026 WL 765109, *17 (E.D.N.Y. Mar. 18, 2026) (collecting cases).  "'To determine the legal sufficiency of the third-party claim, the court must evaluate it against the background of the complaint.'"  *MMC PPA v. Bridgeport Hosp.*, No. 3:11-CV-1733, 2015 WL 5174012, *7 (D. Conn. Sept. 2, 2015) (quoting *Conn. Gen. Life Ins. Co. v. SVA, Inc.*, 743 F. Supp. 107, 111 (D. Conn. 1990)).  "A claim is plausible when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Montague*, 2026 WL 765109, at *17 (quoting *Matson v. Bd. of*

16

*Educ. of City Sch. Dist. of N.Y.*, 631 F.3d 57, 63 (2d Cir. 2011)); *see also Roe v. St. John's Univ.*, 91 F.4th 643, 651 (2d Cir. 2024).

Plaintiff argues that the GFH Defendants failed to sufficiently allege that the GFH Defendants acted under Defendants Biss and Bennett's control or any other legal grounds for indemnification. *See* Dkt. No. 128 at 15-25.[2]

No party contends there was a written contract concerning indemnification between the GFH Defendants and the United States, HHHN, Defendant Biss, or Defendant Bennett. However, "[t]here are two sets of circumstances in which an implied right to indemnification may be found:"

> (1) "an implied right to indemnification may be based on the special nature of a contractual relationship between the parties," known as an "implied contract theory of indemnity" or "implied in fact indemnity" or
>
> (2) "a tort-based right to indemnification may be found when there is a great disparity in the fault of two tortfeasors, and one of the tortfeasors has paid for a loss that was primarily the responsibility of the other," known as "implied in law indemnity."

*Fair Hous. Just. Ctr., Inc. v. 203 Jay St. Assocs., LLC*, No. 21-CV-1192, 2024 WL 3934518, *9 (E.D.N.Y. Aug. 26, 2024) (quoting *People's Democratic Rep. of Yemen v. Goodpasture, Inc.*, 782 F.2d 346, 351 (2d Cir. 1986)) (footnote omitted).  "In either circumstance, 'an indemnity cause of action can be sustained only if the third-party plaintiff and the third-party defendant have breached a duty to the plaintiff and also if some duty to indemnify exists between them.'" *Id.*

---

[2] Plaintiff also argues that the GFH Defendants have not alleged that Defendants Biss and Bennett acted within the scope of their employment. *See* Dkt. No. 128 at 17-18.  However, after Plaintiff filed her response, the Court concluded she had not established Defendant Biss was acting outside the scope of her employment. *See* Dkt. No. 139.  The Court incorporates its previous discussion of that issue by reference.

(citations omitted).  "A party's burden of establishing an implied agreement to indemnify is a heavy one, especially in business relationships where parties are free to negotiate for express indemnification clauses."  *Id.* (citations and quotation marks omitted).

The Court agrees with Plaintiff that the GFH Defendants have not sufficiently pled an indemnification claim because the GFH Defendants owed a duty to Plaintiff independent of Defendant Biss or Bennett, there are insufficient allegations that any GFH Defendant acted under Defendant Biss or Bennett's control, and there is not plausibly a "great disparity in the fault of the tortfeasors."  *See* Dkt. No. 128 at 15-25.

It is true that "privity of contract is not essential to the existence of an implied right of indemnity."  *Mathis v. United Homes, LLC*, 607 F. Supp. 2d 411, 434 (E.D.N.Y. 2009)  (citations omitted).  "Nevertheless, implied indemnification is only available if an agreement to indemnify can be implied between the parties, . . . due to some special relationship that exists between them or some obligation imposed by law."  *Id.* (citing 23 N.Y. Jur.2d, *Contribution, Indemnity, and Subrogation*, § 90) (internal citation omitted).  "The duty to indemnify is one that runs from the indemnitor to the indemnitee."  *Haraden Motorcar Corp. v. Bonarrigo*, No. 1:19-CV-1079, 2021 WL 4906989, *7 (N.D.N.Y. Oct. 21, 2021).  "Without alleging a 'special relationship' between [indemnitor and indemnitee], [the moving party] cannot maintain a common law claim for indemnification."  *Id.* (citing *Ainette v. Market Basket, Inc.*, No. 19-CV-4506, 2021 WL 1022590, *10 (S.D.N.Y. Mar. 16, 2021) (dismissing third-party common law indemnification claims where the third-party plaintiffs "have not made even the barest suggestion that they had any 'special relationship'" with the third-party defendants that could give rise to an "implied duty to indemnify")).

The GFH Defendants argue that "HHHN employees provided services to their patients at

GFH" and "[t]he GFH Defendants were merely following Defendant Biss' directions."  Dkt. No. 122-1 at 18.

The GFH Defendants' arguments, and the allegations in their third-party complaint are conclusory.  They do not allege any "special relationship" between Defendants Biss and Bennett or HHHN and GFH.  There is not a single allegation in the proposed third-party complaint about the agreement between HHHN and GFH that permit outside medical staff to perform medical duties at GFH.  *See* Dkt. No. 122-3.  Rather, the GFH Defendants argue that there is no relationship between HHHN and GFH; therefore, GFH could not be held liable for any of the conduct of an independent midwife who is not employed by the hospital.  *See* Dkt. No. 122-1 at 18 (quoting caselaw to support the assertion that a hospital is not liable for the acts of a private attending physician).

Some courts have held "that it is the hospital that is the beneficiary of this principle[,] . . . where[, for example,] the . . . Second Department[ has] stated [that] '[i]f plaintiff recovers damages against the defendant hospital based on the negligence of the defendant physicians as its servants, the hospital would be entitled to indemnification.'"  *Magwood v. Jewish Hosp. & Med. Ctr. of Brooklyn*, 408 N.Y.S.2d 983, 986-87 (Sup. Ct. 1978) (quoting *Macari v. Parsons Hosp.*, 26 A.D.2d 584, 584 (2d Dep't 1966)) (collecting cases).  However, the GFH Defendants specifically disavow a vicarious legal liability connection between the conduct of "nurse midwives" and the hospital.  Dkt. No. 122-1 at 18.

Insofar as the GFH Defendants seek to claim that Defendants Biss and Bennet controlled the actions of the GFH individual Defendants in Plaintiff's delivery room, "[t]he party seeking indemnification must have delegated exclusive responsibility for the duties giving rise to the loss to the party from whom indemnification is sought, and must not have committed actual

19

wrongdoing itself." *Travelers Indem. Co. v. GHD Consulting Servs. Inc.*, No. 3:22-CV-1136, 2025 WL 295013, *3 (N.D.N.Y. Jan. 24, 2025) (quoting *Bd. of Managers of Olive Park Condominium v. Maspeth Props.*, LLC, 170 A.D.3d 645, 647 (2d Dep't 2019)) (quotation marks and additional citations omitted); *see also Blackhawk Dev., LLC v. Krusinski Constr. Co.*, No. 19-CV-5590, 2021 WL 1225917, at *3 (S.D.N.Y. Mar. 31, 2021) (dismissing common law indemnification claims for failure to assert a plausible claims because the "cursory allegations that [the defendant] 'delegated exclusive responsibility' for 'one or more duties' to [third party defendants], without specifying which duties is insufficient").

"'New York case law supports a proposition that common-law indemnity is barred altogether where the party seeking indemnification was itself at fault, and both tortfeasors violated the same duty to the plaintiff.'" *Firestone v. Berrios*, 42 F. Supp. 3d 403, 421 (E.D.N.Y. 2013) (quoting *Monaghan v. SZS 33 Assocs., L.P.*, 73 F.3d 1276, 1284 (2d Cir.1996); *see also Trs. of Columbia Univ. in City of N.Y. v. Mitchell/Giurgola Assocs.*, 109 A.D.2d 449, 453 (1st Dep't 1985) ("Since the predicate of common law indemnity is vicarious liability without actual fault on the part of the proposed indemnitee, it follows that a party who has itself actually participated to some degree in the wrongdoing cannot receive the benefit of the doctrine").

The GFH Defendants do not plausibly allege that they delegated exclusive control over Plaintiff's labor and delivery to Defendant Biss or Bennett. They also fail to plausibly allege they had no part in the alleged wrongdoing or that there is a great disparity between the parties' roles in the alleged wrongdoing. The GFH Defendants allege that "Defendant Biss, as Plaintiff's nurse midwife, provided all care for the labor and delivery of Baby A," and "[a]ny actions or inactions taken or not taken by the GFH Third-Party Plaintiffs were done so under the authority, supervision, guidance, and/or direction of Defendant Biss." Dkt. No. 122-3 at ¶¶ 45, 47. These

allegations are entirely conclusory.  In their answer to Plaintiff's complaint, the GFH Defendants

admit that Defendant Ralph asked Plaintiff questions about her medical history and medication,

*see* Dkt. No. 70 at ¶¶ 27-28; "nursing staff" took a sample of Plaintiff's urine and "an additional

urine sample was collected," *id.* at ¶¶ 32, 35; and Plaintiff was denied an epidural, *see id.* at ¶ 80.

For the GFH Defendants to attempt to assert that they took no independent actions

concerning Plaintiff and Baby A directly contradicts Plaintiff's allegations and is not supported by

a single factual allegation.  *Cf. Cubilete v. United States*, 469 F. Supp. 3d 13, 20 (E.D.N.Y. 2020)

("While GMD's 'cross-claim[s] d[o] reference the [c]omplaint, [they] d[o] not contain a single

independent fact indicating why [the United States] is obligated to indemnify [GMD] in the event

[GMD] is ultimately found liable to [Cubilete].' . . .  That is insufficient, however, to meet the

pleading requirements of Rule 8").

Even if the GFH Defendants had sufficiently alleged an indemnification claim, the motion

must be denied.  The United States, in opposing the GFH Defendants' motion accurately states

that "any proposed claims that GFH seeks to assert against HHHN and/or Ms. Biss may only be

brought against the United States under the . . . FTCA . . ., and its motion fails as a matter of law."

Dkt. No. 127 at 12.  It properly notes that, "'[b]ecause the United States is the only proper party

under the FTCA, GFH cannot maintain third-party claims or crossclaims against HHHN or Ms.

Biss." *Id.*  The Court agrees.  The GFH Defendants want to add HHHN as a Defendant, but, as

this Court concluded on August 18, 2025, the proper party related to any allegations against

Defendant Biss or HHHN is the United States.  *See* Dkt. No. 139.  Therefore, the GFH

Defendants' motion fails for that reason, in addition to the other reasons already explained.

Nevertheless, the Court notes that "[t]he United States may be impleaded as a third-party

defendant under [Federal Rule of Civil Procedure] 14(a) when jurisdiction is asserted under the

21

[FTCA] and the claim raised is one which might have been made against it in an independent suit." *Berger v. Winer Sportswear, Inc.*, 394 F. Supp. 1110, 1112 (S.D.N.Y. 1975) (citing *United States v. Yellow Cab Co.*, 340 U.S. 543, 553 (1951); 6 C. Wright & A. Miller, Federal Practice and Procedure § 1450 at 275 (1971)). "However, 'for impleader to be proper when the United States is involved, there must be a substantive right to relief asserted by the third-party plaintiff . . . .'" *Id.* (quoting 6 C. Wright & A. Miller, *supra* at 277). "It is clear that the United States can be sued for contribution (or indemnity) as a joint tortfeasor through the provisions of the Tort Claims Act, if a right of contribution exists under state law." *Id.* (citing 28 U.S.C.A. § 1346(b)) (additional citations omitted). "The act was only meant to confer a procedural remedy, however, and did not create a substantive cause of action." *Id.* (citing *Dalehite v. United States*, 346 U.S. 15 (1953); *Van Sickel v. United States*, 285 F.2d 87 (9th Cir. 1960); *Lloyd's London v. Blair*, 262 F.2d 211 (10th Cir. 1958)).

The United States argues the GFH Defendants should not be permitted to refile their motion as against the United States because it would be untimely, they should have known the United States was the proper party before filing their motion, and their claims are premature. *See* Dkt. No. 127 at 12-15.

The Court agrees. The deadline to file a motion passed nearly one year ago. *See* Dkt. No. 106. The GFH Defendants made their motion to join HHHN *after* the United States had already moved to substitute itself for Defendant Biss. *See* Dkt. Nos. 93, 122. The GFH Defendants have known that the United States is the proper party for quite some time. In the GFH Defendants' answer to Plaintiff's complaint, filed on July 10, 2024, they alleged that "Plaintiffs' [amended complaint] fails to name a necessary party including, without limitation, the United States of America." Dkt. No. 70 at 22.

The Court gave the GFH Defendants an opportunity to explain how their motion might have been impacted by the Court's decision to substitute the United States for Defendant Biss. *See* Dkt. No. 139 at 19. Despite previously alleging that the United States should have been named as the proper party, *see* Dkt. No. 70 at 22, the GFH Defendants did not mention the United States in their letter, *see* Dkt. No. 140.

Courts have held that a party "cannot demonstrate good cause [when] the information needed to bring the now-pending impleader motion was within [its] knowledge before the applicable deadline." *Harris v. Speedway LLC*, No. 24-CV-6109, 2025 WL 1202237, *4 (W.D.N.Y. Mar. 10, 2025) (citing *Red Rock Sourcing, LLC v. JGX, LLC*, No. 21-CV-1054, 2025 WL 524024, *4 (S.D.N.Y. Feb. 18, 2025) ("If the moving party 'seeks to add claims based on facts it knew or should have known at the time of the [relevant] deadline, it likely failed to act with sufficient diligence to satisfy Rule 16(b)'") *Fresh Del MonteProduce, Inc. v. Del Monte Foods, Inc.*, 304 F.R.D. 170, 174-75 (S.D.N.Y. 2014) ("A party is not considered to have acted diligently where the proposed amendment is based on information that the party knew, or should have known, in advance of the motion deadline")).

The GFH Defendants alleged and argued that the United States was the proper Defendant for Defendant Biss' conduct, yet they did not seek to join the United States as a third-party Defendant. Additionally, the GFH Defendants have not alleged that the United States is entirely at fault for Plaintiff's alleged injuries and that they are faultless. Without such allegations, they have not stated a claim for indemnification against the United States. *See MMC PPA v. Bridgeport Hosp.*, No. 3:11CV01733, 2015 WL 5174012, *8 (D. Conn. Sept. 2, 2015) ("Bridgeport Hospital cannot maintain a cause of action against the United States for indemnification because the rationale for allowing indemnification, i.e., that the passive tortfeasor

is chargeable merely with constructive fault does not apply, or is negatived [sic], wherever it appears that the party seeking indemnity was himself guilty of affirmative misconduct which was a proximate cause of the injury in question" and "the allegations of [the] plaintiffs' complaint assert that Bridgeport Hospital was 'guilty of affirmative misconduct which was a proximate cause of the injury in question'").

Finally, impleader of the United States would be premature such that the Court will not permit the GFH Defendants to file an indemnification or contribution claim at this time. Based on the Court's substitution of the United States, dismissal of the claims concerning Defendant Biss, and the stipulation dismissing Defendant Bennett, there are currently no pending claims against HHHN or the United States. The only pending claims are against the GFH Defendants. Therefore, as the United States contends, "the addition of the United States would [] delay and complicate this action as it would be forced to participate in discovery and litigation over allegations in a complaint which, for the most part, is not directed at it and which the Plaintiff cannot litigate directly against the United States . . . ." Dkt. No. 127 at 15.

The most efficient use of resources in this case is to proceed with discovery and let the case resolve as to whether any one of the GFH Defendants harmed Plaintiff. If a conclusion is reached in the affirmative, then the GFH Defendant(s) found liable could potentially bring indemnification and contribution claims against the United States for the conduct of HHHN's employees. *See Armored Grp., LLC v. Homeland Sec. Strategies, Inc.*, No. 07-CV-9694, 2009 WL 1110783, *3 (S.D.N.Y. Apr. 21, 2009) ("New York law clearly provides that a claim for indemnification or contribution is premature where there has been neither entry of judgment nor

24

payment") (citations omitted)).[3]

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that the motion for joinder (Dkt. No. 122) is **DENIED**; and the Court further

**ORDERS** that the parties contact Magistrate Judge Paul J. Evangelista to reset discovery and dispositive motion deadlines; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated:  March 30, 2026
        Albany, New York

_____
Mae A. D'Agostino
U.S. District Judge

---

[3] The portion of the GFH Defendants' motion that seeks to amend their answer to Plaintiff's complaint to allege crossclaims against Defendants Biss and Bennett is denied as moot because neither remain in this case as Defendants.

25